### 13820. NEW AMSTERDAM CASUALTY CO. v. SUMRELL.

1. There was sufficient evidence to support the finding of the Industrial Commission that the relation of employer and employee existed between the respondent and the decedent, for whose death compensation was claimed for dependents, under the Georgia workmen's compensation act.
2. An injury arises " in the course of employment," within the meaning of the workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto.

(*a*) An accident arises " out of " the employment when it arises because of it, as when the employment is a contributing proximate cause. This and the condition stated above must concur before the act can apply.

(*b*) If the work of an employee or the performance of an incidental duty involves an exposure to the perils of the highway, the protection of the compensation act extends to the employee while he is passing along the highway in the performance of his duties.

(*c*) But there was no sufficient competent evidence to bring the instant case within the purview of these rulings, though it would be otherwise if the injury and death of the decedent occurred as assumed in the briefs but not shown by the evidence.

(*d*) Whether an incorrect assumption by the attorney for the plaintiff in error that a material and necessary fact appears in the record will, without more, amount to a waiver of its absence, it is unnecessary to decide (but see *Farmers Bank* v. *Avery*, 145 *Ga.* 449, 89 S. E. 409), since the judgment is reversed for another reason appearing in the record and stated below.

3. " If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period." Workmen's compensation act, sections 2 (c) (3) (Ga. L. 1920, p. 168). Hence an award of compensation which is based upon evidence relating solely to the qualifications of the employee as a salesman, his earnings in commissions during a period of less than one month, and the prospect of an increase in his earnings had he lived is without sufficient competent evidence to support it. For this reason, irrespective of any other, the judgment of the superior court affirming the award on the appeal of the insurance carrier is reversed.

DECIDED AUGUST 24, 1923.

Appeal; from Irwin superior court — Judge Eve. June 15, 1922.

*Madison Richardson*, for plaintiff in error.

*Leonard Haas, H. A. Alexander*, contra.

BELL, J. Mrs. J. H. Sumrell, alleging Princess Manufacturing Company to be the employer and her husband J. H. Sumrell the employee, applied to the Industrial Commission for an award of compensation for herself and her two minor children, as dependents of her husband, who died on September 5, 1921, as a result of injuries received by him three days earlier. An award was granted, and the insurance carrier, New Amsterdam Casualty Company, entered an appeal to the superior court. To a judgment there rendered, affirming the order and decree of the commission, the insurance carrier excepted.

1. It is contended by the plaintiff in error that there was no sufficient competent evidence to authorize the finding of the commission that the decedent was an employee of the Princess Manufacturing Company of Atlanta, Ga., at the time of his death. It is undisputed that some time in August, 1921, under a contract in parol, the decedent began to sell goods for the Princess Manufacturing Company in south Georgia and Florida, for which he was to receive as his sole compensation a commission of 7½ per cent. He had earlier in the same year traveled for the same company in North Carolina, and the conclusion is warranted that the original agreement was extended to include, after some agreed suspension of the service, the contractual relation existing at the time of his death. Direct evidence in regard to the terms and conditions of the contract is very meager and uncertain; and while it · is insisted, in reference to the company's control over the services to be performed, that a number of the statements of the sales manager who represented the Princess Manufacturing Company in making the agreement are nothing but conclusions in relation to its effect, it can not be adjudged, in the state of the record, that the testimony of this witness did not relate to terms and conditions which the parties agreed upon in the formation of their contract. The same is true also of some of the testimony of the president.

The decedent traveled in his own automobile and was responsible for all the expenses of his travel. While these facts and also the method of his compensation are to be considered in determining whether the relation of employer and employee existed, they are circumstances only; for the test must lie in a more important matter, — namely, the power of control reserved to the proprietor over the conduct of the work which the decedent was to do. Chicago, Rock Island & Pacific Railway Co. *v.* Bennett, 36 Okla. 358 (128 Pac. 705, 20 A. L. R. 678 (1)); Brown *v.* Industrial Commission, 174 Cal. 457 (163 Pac. 664 (4)). " The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted *he was subject* to such person's orders and control, and *was liable* [italics ours] to be discharged by him for disobedience of orders or misconduct." See *Brown* v. *Smith,* 86 *Ga.* 274 (12 S. E. 411, 22 Am. St. Rep. 456) ; 1 Shearman & Redfield on Negligence (6th ed.), 160. If the contract reserve to the proprietor the power of

appointment and dismissal, and control of the details of the work to be performed, the proprietor becomes an employer and the other an employee. 1 LaBatt's Master & Servant, § 18. In the case at bar it appears that no definite time was fixed for the termination of the relation, whatever it was; but it is inferable that the Princess Manufacturing Company reserved the power to dismiss the decedent for cause at any time; that such dismissal would be accomplished by the withdrawal of the samples belonging to the company and carried by the decedent, from which he made his sales; that the territory in which the decedent would work embraced Florida and south Georgia, with the privilege of including also North Carolina, if the salesman so desired, with any other territory not already assigned to some other salesman of the company; that the company would be kept in touch with his route, and receive his reports from time to time; that he should keep it constantly informed of his whereabouts; that the seller might refuse to accept any orders for goods which he tendered, " had the right to tell him not to sell any more," and fixed the prices and terms for the sales; that he could sell no competitive lines of goods; that the seller might require him to look after collections of accounts, without further remuneration; that he was required to give at least three fourths of his time to the work; that his territory was exclusive unless he failed to produce sufficient business, in which event the seller might send another salesman " right behind him over the same territory." The decedent could have ceased the employment at any time he chose, and while it appears that he was free, with the exception above stated, to go anywhere he pleased, he was required to call upon the customers personally every sixty days. These inferences we think are warranted by the evidence adduced, and in our opinion the commission was authorized to find that the relation of employer and employee existed.

If it be true as contended by the plaintiff in error that the witnesses from whose testimony we have deduced the above were testifying only from conjectures in regard to the power reserved to the company over the details of the work which the decedent was to perform, this, as suggested above, does not affirmatively appear from the record. " Where a witness testifies to a fact, the presumption is, in the absence of anything to the contrary, that he is testifying from his own knowledge." *Shaw* v. *Jones, 133 Ga.* 446

(3) (66 S. E. 240). The findings of the commission on questions of fact, if supported by any evidence, are conclusive. See section 59 of the workmen's compensation act (Ga. L. 1920, p. 198).

2. It is stated in the brief of the attorney for the plaintiff in error that " On the night of September 3, 1921, that day being Saturday, at about 11:30 o'clock p. m., Sumrell [the decedent] was traveling alone in an automobile from Ocilla to Fitzgerald. When near Ocilla his automobile ran over a dog, upset, and produced an injury to Sumrell from which he died two days later;" but in regard to the immediate circumstances of the injury we can discover from the evidence in the record only that on the day following his departure by automobile from Jacksonville, Florida, presumably for Atlanta, his wife received notice that he was injured, and went immediately to him; that he " died in the Fitzgerald hospital after an operation." There is no proof that his car overturned, nor, if so, where or from what cause, or at what hour. If the immediate circumstances of his injury and death, as stated in the brief for the plaintiff in error, were taken for granted before the commission, they are not set forth in the record either as admissions or otherwise; but since the case must be returned for the reasons stated in the third headnote, regardless of other assignments, we will treat it, for the purposes of discussion, just as though the facts supposed had been established, along with the others appearing in the record.

It is contended by the plaintiff in error that the injury and death of the decedent did not arise out of, nor in the course of, his employment. The decedent was privileged under his contract to work in Florida and south Georgia, and also in the State of North Carolina if he chose. It appears from the evidence that it was not only expected but preferred by his employer that he should travel by automobile, and it was also anticipated by his employer that he would travel at times by night. He had on August 22, a few days before his death, written to his employer, " Will leave for North Carolina as soon as I get back to Atlanta, and will want the fall line, as I expect to get some business up there on my next trip." While subsequent letters to his house would have authorized the conclusion that he later had abandoned this idea, they did not absolutely demand it. His wife, the claimant, testified: He " wrote me from Jacksonville that he was returning to Atlanta

to see his house and then go to North Carolina and then back to Florida." This letter was not in evidence, the claimant testifying that it had been destroyed. His employer was entirely agreeable to such a course, though the employer did not, it seems, so express itself to the decedent at the time. But, regardless of that, the commission was authorized, under the evidence, to find that the decedent had started by automobile from Jacksonville, Florida, to Atlanta, there to see his employer, with the intention of going thence to North Carolina, where he would continue selling goods under the existing agreement, and that he was acting within the scope of the duties of his contract, in thus departing from Jacksonville.

If, while traveling on such a mission by the ordinary route and at lawful speed, he was killed by the overturning of his automobile in a collision with a dog upon the highway, though at the late hour of 11:30 o'clock, on a Saturday night, a finding that his injury and death arose out of and in the course of his employment would be warranted. Of course, his speed would be presumed to be lawful, if nothing to the contrary appeared. On the effect of unlawful speeding upon a case of this character, see Fidelity & Deposit Co. v. Industrial Acc. Commission, 171 Cal. 728 (154 Pac. 834, L. R. A. 1916D, 903). Our act (section 2 (d)), like practically all others, provides for the award of compensation in case of "injury by accident arising out of and in the course of the employment." The courts, in reviewing the cases, are accustomed to justify the allowance or disallowance of claims by the meaning attributed to the words embraced in this expression. 28 R. C. L. 796, § 88. Volumes have been written in the opinions upon this clause. Lord Wrenbury observed of the workmen's compensation act of England that " No recent act has provoked a larger amount of litigation than the workmen's compensation act. The few and seemingly simple words ' arising out of and in the course of the employment ' have been the fruitful (or fruitless) source of a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion. From their number counsel can, in most cases, cite what seems to be an authority for resolving in his favor, on whichever side he may be, the question in dispute." Herbert v. Fox (1916), A. C. 405 (85 L. J. K. B. 441, 114 L. T. N. S. 426, 32

Times L. Rep. 261, 60 Sol. J. 237, 9 B. W. C. C. 164, Ann. Cas. 1916D 578, 7 British Rul. Cas. 142). See 28 R. C. L. 799. He also said that it is best to go always back to the words of the statute, and, guided by certain broad principles which must be taken to be established, seek to apply this language to the particular case.

A leading case is that of McNicol, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A 306), in which the court said: " It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the act, and with precision exclude those outside its terms. It is sufficient to say that an injury is received ' in the course of ' the employment when it comes while the workman is doing the duty which he is employed to perform. It ' arises out of ' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises ' out of ' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

It has been repeatedly observed that if an accident arises out of the employment, it ordinarily arises in the course of it, but the converse is not true. An injury may occur in the course of the employment and yet not arise out of it. " Arising out of " does not mean the same as " in the course of," but the expressions in the act impose a double condition. The words " in the course of the employment " relate to the time, place, and circumstances under

which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto. Fournier *v.* Androscoggin Mills, 120 Me. 236 (113 Atl. 270, 23 A. L. R. 1156 (2)). The words "arising out of the employment" refer to the causal connection between the employment and the injury. Mueller Construction Co. *v.* Industrial Board, 283 Ill. 148 (118 N. E. 1028, L. R. A. 1918F 891 (2)); McNicol's case, supra.

The compensation acts, though in derogation of the common law, being highly remedial in character, should be liberally and broadly construed to effect their beneficient purposes. Sale *v.* Kindelberger, 91 West Va. 603 (114 S. E. 151 (3)); 28 R. C. L. 755, 50.

We think that the case which is supposed by the inclusion of the facts assumed with those appearnig in the record before us would be one where the injury could be found to arise in the course of the employment. The decedent, though not engaged in the sale of goods at the time, was yet in the performance of an act incidental thereto, and was at a place where he might reasonably be for that purpose, within the period of his employment. He could sell in Florida, south Georgia, or North Carolina, but could not sell without traveling. In shifting from one State or locality to another his employment was not suspended, nor did he lose the protection of the act, since this was his right under the contract which the commission could have found to exist. The case is not excluded from the operation of the act because of the fact that the employee may have been transferring from south Georgia or Florida to North Carolina in the hope of finding better trade, and therefore of increasing his earnings. As he thus promoted his own interests he advanced the interests of his employer. The duty ancillary or incident to the employment has in some instances been held to include the doing of something primarily for the benefit of the employee but ultimately for the master. Larke *v.* John Hancock Mutual Life Ins. Co., 90 Conn. 303 (97 Atl. 320, 12 N. C. C. A. 308, L. R. A. 1916E, 584).

But it is contended further that the death of one who is killed by the overturning of his automobile upon the highway in a col-

44

lision with a dog, even if in the course 'of the employment, does not arise out of it. It is insisted that an accident of this character is one common to the entire traveling public, and is not a risk so peculiar to the employment as to come within the provisions of the act. Much has been said by the courts upon the subject of street and highway accidents, and in some jurisdictions this contention would likely be upheld. But the weight of authority and the better reason, we think, is against it. The compensation acts have been generally held not to authorize an award in case of injury or death from a peril which is common to all mankind or to which the public at large is exposed; but where the duties of the employee entail his presence or travel upon the highway, the claim for an injury there occurring is not to be barred because it results from a risk common to all others upon the highway under like conditions, unless it is also common to the general public without regard to such conditions, and independently of place, employment, or pursuit. See 28 R. C. L. 804, 93; also the cases cited below. If the work of an employee or the performance of an incidental duty involves an exposure to perils of the highway, the protection of the workmen's compensation act extends to the employee while he is passing along the highway in the performance of his duties. Katz *v.* State Industrial Commission, 232 N. Y. 420 (134 N. E. 330, 23 A; L. R. 401). "Where a workman is sent into the streets on his employer's business, whether habitually or occasionally, and whether on foot or on a bicycle, or on an omnibus or a car, and he meets with an accident by reason of a risk of the streets to which his employment exposes him, the accident arises out of as well as in the course of his employment; and it is immaterial that the risk which caused the accident is one which is shared by all members of the public using the streets under like conditions." Dennis *v.* White (England), 1917 A. C. 479, 15 N. C. C. A. 294.

Such part of the public as is found upon the highway may be divided into the following general classes: (1) those traveling for pleasure, curiosity, health, or some reason other than business; (2) those who are traveling on business for themselves; (3) employees who are traveling on the business of their employers, but where the employment is not of a class or character which falls within the provisions of the workmen's compensation act; (4)

employees traveling on the business of their employers in those instances where the relation of employer and employee is covered by the provisions of the act. When a person of any of the enumerated classes is injured on the highway by a peril to which he would not otherwise have been equally exposed, the injury may be said to have arisen out of whatever mission he was on. The circumstance that those belonging to the first three classes when traveling upon the highway may be exposed equally with those of the fourth class does not alter the fact that an injury caused by such cause to a person of the latter class is an injury arising out of his employment. The reason that those of the first three classes who are injured from such causes are not entitled to compensation therefor is that neither the persons themselves nor their missions are protected by the provisions of the workmen's compensation act, and not that the injury itself does not arise out of and in the course of the pursuit or mission on which they are traveling at the time; while those of the fourth class are entitled to compensation for injuries so arising because, differently from the others, they and the engagement at the time being pursued are within the provisions of the act.

We think, too, that we may say as a matter of common knowledge that the danger to one traveling upon the highway in an automobile of being injured by the overturning of the car in colliding with a dog is an ordinary peril of the road, and that an injury resulting from such a cause is one that arises out of the pursuit in which the traveler is engaged at the time. Such an injury is not one common to the public or neighborhood, in the sense expressed above.

It should be understood that what we have said in the above discussion has no reference whatever to a case where an employee who has a fixed and certain place of work is injured in going to or returning from his place of labor. The matters here discussed are in relation to an entirely different case, and it is not within the purpose of the present discussion even to suggest whether an injury in a case of the former class could or could not be compensable under the provisions of the Georgia workmen's compensation act.

The workmen's compensation law does not abolish the ordinary rule that a party to whose case a fact is essential must carry the burden of proving it, nor does it provide an absolute insurance

for the employees who are subject to its provisions. The record bring silent as to how and under what *immediate* circumstances the decedent was killed, there is not sufficient proof that the injury and death arose out of and in the course of the employment. But the judgment being reversed for other reasons, it is unnecessary to decide whether a reversal should be ordered merely for the absence of essential facts when the plaintiff in error in its brief has assumed their existence. See, however, *Farmers Bank* v. *Avery,* 145 *Ga.* 449 (89 S. E. 409).

3. The third headnote does not require elaboration. For the reasons stated therein, the appeal to the superior court should have been sustained, and the judgment of that court in affirming the order and decree of the commission is therefore reversed. While we might be warranted in directing that the new hearing be limited to the question of the amount of compensation, where the only error exists in the faulty basis upon which it was determined, in view of the condition of the record as noted in the preceding division of this opinion we will let the case be remanded for another hearing de novo before the commission.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*