## 22954. LUMBERMEN'S MUTUAL CASUALTY COMPANY et al. v. COOPER.

DECIDED AUGUST 2, 1933.

*Wilson, Bennett & Pedrick,* for plaintiff in error.
*Parks, Garrett & McDonald,* contra.

GUERRY, J. This is a workman's compensation case. The claim of Mrs. Cooper, wife of the deceased, was heard by a director of the department of industrial relations and an award made by him in favor of the claimant, and, on appeal to the full board, the award was affirmed. The case was appealed to the superior court, and the judge of that court affirmed the action of the full board in affirming the finding of the sole commissioner. The director who made the award found the following state of facts: (1) "That Cain Cooper, on October 30, 1931, on the day of the accident which resulted in his death, . . was an employee of the Okefenokee Lumber Company at $1 per day, or $6 per week, and that on account of his special knowledge he was instructed by the manager of the Okefenokee Lumber Company to go into the woods some twenty miles away and cut the logs at a certain length after they had been snaked out of the woods; and that this service was for the Okefenokee Lumber Company." This finding was admitted by both parties. The next finding is as follows: (2) "The evidence further shows, and the director finds, that there was a general understanding that his employment was by the day and that the day began at a certain time, and that on or about that time, with the full knowledge and consent of the Okefenokee Lumber Company, he caught trucks going in that direction, which was his only means

of transportation to the woods where the logs were to be cut; and that he rode on these trucks with the knowledge and consent of the Okefenokee Lumber Company." The testimony discloses that there was no arrangement between the deceased and his employer as to transportation to his place of work, and that it was left entirely to the discretion of the employee as to how he should go. As to the time the deceased began work, the uncontradicted testimony of the employer was as follows: "Q. When was his time figured from? A. Well, I tell you, I don't know. . . Q. And his time began when he reported to work at the mill, did it not, that is, his employment? A. Well, *when he was working at the mill.* (Italics ours.) Q. His employment started when he reported to the mill when he was working? A. They do at a certain hour, because we started at a certain hour and stopped at a certain time. Q. What is that hour? A. I think we started at a quarter of seven. Q. When Cain Cooper reported to the mill at a quarter of seven he was considered as having started to work on that date? A. Yes, sir. Q. His employment started at a quarter of seven in the morning at the mill? A. If he was working at the mill. . . Q. One day he missed a truck didn't he? A. Yes, sir, I think he did. . . Q. You didn't pay him for that day? A. No, sir. Q. Suppose he had gotten down there at noon, would you have paid him for a half day or a whole day? A. A half day. Q. The pay began when he got to the woods? A. Yes, sir. Q. You testified a while ago that his pay began when he started at the mill in the morning? A. I have an hour to start to work at the mill. Q. That is the mill hand? A. Yes, sir." It was shown further that the deceased had no duties at the mill, nor was he employed as a mill hand.

In determining the case at bar we have to consider only one question: Did the injury which caused the death of the employee arise out of and in the course of his employment so as to be compensable under the workman's compensation act? Or perhaps the question may be better stated as to the particular facts of the case: Does an injury to an employee, whose actual place of work is situated in woods twenty miles from the mill of his employer, where such employee comes to the mill each morning to catch a truck going to his place of work, this being done with the knowledge and consent of his employer, which truck does not belong to,

nor is operated or controlled by his employer, and where it is further shown that the employee's only duties were to be performed in the woods, that his time did not begin until he reached the woods, that there had been no arrangement made between the employee and employer for transportation, that no duty devolved on the employer to transport the employee to such place of work under the contract of employment, arise out of and in the course of his employment where he is killed by being thrown from the back of the truck while it is proceeding to the woods? The terms "out of" and "in the course of" are not synonymous; both present separate and distinct conditions, although they are usually considered together, as it is difficult to discuss one without touching upon the other. To entitle a workman to an award under our workman's compensation act the injury complained of must arise both "out of" and "in the course of" his employment. The two conditions coexist. They must be concurrent and simultaneous. One without the other will not sustain an award. *New Amsterdam Casualty Co. v. Sumrell, 30 Ga. App.* 682 (118 S. E. 786) ; *United States Fidelity & Guaranty Co. v. Waymick, 42 Ga. App.* 177 (155 S. E. 366) ; *Employers Liability Assurance Co. v. Montgomery, 45 Ga. App.* 634 (165 S. E. 903). If an accident does not occur "in the course of," it can not arise "out of" the employment (Fourniers case, 120 Me. 236, 23 A. L. R. 1156), as it is difficult, if not impossible, to conceive of an injury arising out of and not also in the course of the employment. We think, therefore, that the determining question in this class of cases is whether the injury arose "in the course of" the employment. We shall first consider that question.

The general rule as laid down by our courts in determining the question whether the injury arose "in the course of" the employment is as follows: "An injury arises 'in the course of employment,' within the meaning of the workman's compensation act, when it occurs within the period of the employment, at a place where the employee is in the performance of his duties, and while he is fulfilling those duties, or engaged in doing something incidental thereto." *New Amsterdam Casualty Co. v. Sumrell,* supra; *United States Fidelity and Guaranty Co. v. Waymick,* supra; *Employers Liability Assurance Co. v. Montgomery,* supra. "The words 'in the course of the employment' relate to the time, place and cir-

cumstances under which an accident takes place." *New Amsterdam Casualty Co.* v. *Sumrell,* supra. This rule seems to be sustained by the greater weight of foreign authorities. In Cox *v.* Kansas City Refining Co., 108 Kan. 320 (195 Pac. 863, 19 A. L. R. 90), it was said: "An accident happens in the course of employment within the meaning of the workman's compensation act if it happens while the employee is at work in his employer's service." See also, in this connection, Ann. Cas. 1918B, 769; 1 Honnold on Workman's Compensation, 323. On page 346, § 105, the above-cited author says: "It is essential to the right to compensation that the injury shall have been received in the course of the workman's employment; that it shall have been received while he was doing some act reasonably incidental to his work. An accident or injury is so received where it occurs while he is doing what a man in like employment may reasonably do within a time during which he is so employed, and at a place where he may reasonably be during that time."

After ascertaining the general rule laid down by our courts and courts of other States it becomes important to look into a few cases where the rule has been applied to facts similar to the facts in this case. In 10 A. L. R. 169, we find the following language: "It is generally held that where transportation is furnished by an employer as an incident to the employment, an injury suffered by an employee going or coming in the vehicle so furnished by the employer, and under his control, arises out of and is within the course of the employment within the meaning of the workman's compensation act." In Harrison *v.* Central Con. Co., 135 Md. 170 (108 Atl. 874), 271 Mass. 76, it was said: "When the injury occurs before the beginning or after the termination of work there are two general rules applicable to the question as to whether it arose out of and in the course of the employment. The first is that an employee while on his way to work is not in the course of his employment. The second is where the workman is employed to work at a certain place, and as a part of his contract of employment there is an agreement that his employer shall furnish him free transportation, and if an injury occurs during the course of the transportation it is held to have arisen out of and in the course of the employment." Osterhaut *v.* Latham, 92 Conn. 91 (101 Atl. 494); Dominiguez *v.* Pendola, 46 Cal. App. 220 (188 Pac. 1025); Holmes *v.* Great North-

ern R. Co., 2 Q. B. (Eng.) 409; 69 L. J. Q. B. N. S. 854; Hackley-Phelps Bonnell Co. *v.* Industrial Commission, 165 Wis. 586 (162 N. W. 921, L. R. A. 1918A, 277. In Davies *v.* Rhymney Iron Co., 16 Times L. R. (Eng.) 329, 2 B. W. C. C. 22, a workman who was injured a fraction of a mile from his place of work, while alighting from a train furnished by his employer for the workman's convenience, but which the employer was not required to furnish or the employee to use, was held not to have suffered an injury from an accident arising out of and in the course of his employment. As a general rule text-writers upon this subject seem to recognize that injuries sustained by an employee while going to or riding from his work, when there is no contract of transportation, are not to be regarded as arising out of or received in the course of his employment. See, in this connection, Walker *v.* Hyde, 43 Idaho, 625; Bass *v.* Shreveport Eldorado Pipe Line Co., 4 La. App. 107; Nugent *v.* Lee Lumber Co., 4 La. App. 371; Gruber *v.* Mercy (N. J. L.), 145 Atl. 106; Glaser *v.* Ideal Guarantee Roofing Co., 221 App. Div. 434 (223 N. Y. Supp. 237). See also North Point Consol. Irrig. Co. *v.* Industrial Commission, 61 Utah, 421, where a foreman undertook, on his own initiative, to transport men to work, and it was held that the employer could not be held responsible for an accident which occurred while they were on their way to work. It was held in Crow *v.* Los Angeles Ry. Cor., 1 Cal. I. A. C. Dec. 449, that where a street-car motorman was injured while boarding a street-car to take him to the place where he was to take his own car, and was neither obliged to report before taking out his car, nor did his time or pay commence until he took charge of his car, and where the car upon which the employee was injured was not furnished by the railway company for the purpose of taking its employees to work, but was used in carrying passengers generally, though employees were allowed use of all cars free of charge, whether going to work or on private business, such injured employee was not acting within the course of his employment at the time of the accident and was not entitled to compensation.

Coming now to the authorities in our own State. In the case of *Savannah River Lumber Co.* v. *Bush, 37 Ga. App.* 539 (140 S. E. 899), which was a case where the deceased was killed while returning home from his work by boat, which he owned, it being necessary to go by water from and to his place of work, Bell, J., in

affirming the award of the commission, used the following language: "Granting, as did the industrial commission, that the relation of master and servant was duly established, the evidence authorized the inference that the decedent was not in the course of his employment at the beginning of the event which caused his death. Under the facts appearing, he was not in the employment of the company while going to or returning from Bear Creek swamp, the place where he worked, but in doing so he was his own master and was subject to the will and order of no other person." In *Norwich Union Indemnity Co.* v. *Johnson,* 36 *Ga. App.* 186 (136 S. E. 335), the deceased was an employee of the MacDougald Construction Co., and lived with the cook in the camp, which was about a half-mile from his place of work. In attempting to catch a truck of the defendant to ride to his place of work he was killed. Luke, J., in delivering the opinion of the court, said: "The record fails to show that at the time of the injury in question the employee was actually engaged about the work of his employer, and the evidence fails to disclose that the injury was occasioned in the course of his employment." In the instant case the evidence disclosed there was agreement between the deceased employee and his employer for transportation to and from his work. It was also shown that it was a matter entirely within the discretion of the employee as to the means he would employ in getting to his place of work; that he had no duties at the mill and his pay did not begin until he reached the woods; that the truck which he used for transportation was not owned or controlled by his employer. We can not say under any view of the law, or from any legal reasoning that the accident here arose in the course of the deceased's employment. We have not overlooked the principle that in some instances, from the nature of an employment, the employee is considered as continuously in the course of his employment, as in the case of *United States Fidelity and Guaranty Co.* v. *Waymick,* supra, where it was said by Bell, J.: "The conditions under which he [the deceased] was working were such that he was in effect engaged in his employment during the time that he spent on the island;" but that principle has no application here, for the reason that the employment in the case sub judice was by the day. Nor do we think that the passive acquiescence of the employer in allowing his employee to catch the truck of a third party affects the case. See, in this connection,

*Walker* v. *Hyde,* supra, *Nugent* v. *Lee Lumber Co.,* supra. We think, therefore, that the injury which caused the death of the insured in this case did not arise "in the course of" his employment, and that the award of the department of industrial relations is not sustained by sufficient evidence. The·superior court therefore erred in affirming the award.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*