27341. CONTINENTAL CASUALTY COMPANY *et al. v.* WEEMS.

Decided June 2, 1939.   Rehearing denied July 22, 1939.

*T. Elton Drake, Boykin & Boykin,* for plaintiff in error.

*Furman Smith, Inman Brandon, Brandon, Hynds & Tindall,* contra.

MacIntyre, J.   This case was brought to this court by a bill of exceptions to an order of the superior court reversing an award of the Industrial Board, which award held that the accident upon which claim in the instant case is based did not arise out of and in the course of the employee's employment.   The evidence is conclusive that the duties of the husband of the claimant, as superintendent of the ice plant, were not clearly defined, and that the deceased could have reasonably thought it was his duty as a superintendent to do the thing in the course of which the accident occurred.   71 C. J. 667 (38) ; 1 Schneider's Workmen's Compensation Law, 743.   It does appear, however, that the deceased was the superintendent, and "it was his duty to supervise the plant;" that he outranked any other local man, and that his authority was the highest of any of the local employees; that Mr. Hancock was the president of the ice company and lived in Rome, and that the

company in Carrollton was one of several branches of his company. Mr. Hancock testified that the deceased had charge of the general supervision of the business and had authority to do light construction work, but not to make any permanent changes in the nature and manner of the plant, and that work of this latter character would have to be taken up through Mr. Hauser, a non-resident engineer who lived in another town. The claimant's attorney asked Hancock, the president, "In selecting individuals to act as your plant manager, you endeavor to select individuals who have initiative, I assume?" A. "Yes, sir." Q. "And who will not pass on small detail work to you for approval prior to undertaking it?" A. "Yes, sir." The president was further asked, "Do you know why Mr. Weems [the deceased] did not submit this to you for approval beforehand?" A. "As I stated a moment ago, he was very energetic and he wanted to do something that would, he thought, beautify it or look nice and thought maybe after he got it up we would be pleased, and would approve it." It seems that they had a local engineer who ordinarily did construction work, but the general manager, Mr. Weems, was in charge of the local engineer and all other local employees, but that on heavy construction the chief engineer and the manager would decide what heavy construction work was necessary and then they would submit that to the president.

So here we have the superintendent or manager of the defendant's ice plant in Carrollton conceiving the idea that flood lights, similar to those used by filling-stations, would illuminate the plant, the ice-loading platform, and the sign on the front of the plant, thereby serving a fourfold purpose: to enhance its attractiveness, to increase its efficiency, to lessen the risk of theft, and to serve as an advertisement by illuminating at night the existing advertising sign which otherwise was not illuminated. He consulted a lighting engineer of the Georgia Power Company who approved the idea and told him what equipment would be necessary in general and where such a light should be placed to best accomplish the purposes the deceased had in mind. The superintendent (deceased) then decided to save the company expense by erecting a pole himself upon which a flood light could later be placed. For an inexpensive pole, an old abandoned iron pipe from the company's scrap heap was selected. He was in the act of assisting his

subordinates in placing the pole in a hole which had been dug for that purpose at a point immediately across from the plant on property customarily used by the company for parking and storing wagons and trucks, when the pole came in contact with high-tension electric wires, causing his immediate electrocution. He was merely erecting the pole so that the company would be saved the expense of having the pole erected by an electrician, and he had intended to have an electrician install the flood light, wire it, and make the necessary electrical connections, after he, with his local crew, had erected the pole.

We recognize the rule that "if a workman, when there is no emergency, should of his own volition see fit to intermeddle with something entirely outside the work for which he is employed, he ought not to be allowed compensation upon the mere plea that he thought his act would be for the benefit of his employer. That plea may be of value under some circumstances, but it can not authorize an employee to voluntarily take upon himself the performance of work for which he was not employed" (1 Schneider's Workmen's Compensation Law, 967, § 292), and yet "the words 'arising out of and in the course of the employment' appear to me to be sufficient to include something which occurs while the workman is in his master's employment and on his master's work, although he is doing something in the interest of his master beyond the scope of what he was employed to do. The act does not say 'when doing the work he was employed to perform,' and it is a fair inference that if it had been intended to limit the right to compensation to such accidents different language would have been used from that which occurs in the act. It must be assumed, therefore, that the legislature used language of wider scope to include cases where a workman intervenes to do something useful or helpful to his master, although outside the special duties which he is employed to perform." 1 Schneider's Workmen's Compensation Law, 971, § 292. "If a workman whose duties are not clearly defined reasonably considered it to be his duty to perform the act he was doing when injured, the injury may be said to have arisen in the course of the employment." 71 C. J. 666, 667, § 406.

In the instant case, if the attempt to put up the electric-light pole was reasonably within the scope of the deceased's (superintendent's) employment, the fact that from ignorance or error in

judgment he used a metal pipe which was dangerous material, and was not provided by the master, should not necessarily exclude the conclusion that the injury arose out of the employment. The term can not be restricted to injury caused from anticipated risks of the service, if the law is to be of the benefit intended. 1 Schneider's Workmen's Compensation Law, 974, 975. *Continental Casualty Co.* v. *Haynie,* 51 *Ga. App.* 650, 652 (181 S. E. 126). Whether the employee negligently put up the pole was a question of negligence and would not affect the question of recovery by the employee under the workmen's compensation act. 1 Schneider's Workmen's Compensation Law, 972 (21).

If the testimony in the instant case had shown that if the deceased had erected a wooden pole for the same purpose and under the same circumstances as here, which, if it (the wooden pole) had come in contact with the wires, would not have caused injury, would the fact that the deceased used an iron pole, instead of a nonconductor of electricity, prevent his wife from recovering compensation under the act? We think not. The mere fact that he used a metal pole merely goes to the question of negligence which is not material in a workman's compensation case.

While it may be said that the digging of a hole and the placing of a pole therein were not among the technical duties of the deceased superintendent, yet it seems to us that a general superintendent in charge of a local ice plant would necessarily be required to perform various and sundry duties in and around the plant other than mere office work. Even though no special permission had been obtained by the deceased from the non-resident superior officers of the company to make the particular improvements, nevertheless, it does not seem to us to have been inconsistent with the duties of the local superintendent for him to have undertaken to assist in improving the yard of the company, which would provide better facilities for handling the company's business at the plant. It is true that the president of the company, who lived in another town, testified that it was not the duty of the manager to install such a flood light, and that the manager in the course of his duty should have consulted a non-resident engineer and him, the non-resident president, before he attempted to locate any flood light on any part thereof; however, Mr. Hauser, the non-resident chief engineer, testified that he saw nothing improper in the local superintendent

erecting a pole upon which electricians were later to put electrical equipment. Where no instructions were given to the local superintendent which would clearly and definitely show that he did not have such discretionary powers (especially where he was the highest ranking officer of the company in the town in question), it seems to us unreasonable to say that the local superintendent was not exercising due discretion in performing this work (this being a workman's compensation case it was beside the question whether he was negligent or not in the manner he was performing it) which work was for the benefit of the ice company alone, and not for his benefit or the benefit of any other person whatsoever. We are unwilling to say that the family of the deceased superintendent, who, the testimony of his superior officers showed, was an energetic and faithful employee and who was apparently seeking to promote and advance the interest of his employer at the time of his fatal injury, should not be allowed compensation. The initiative of an able and energetic employee of a business may be of importance to those whose business he is superintending, and we would not wish to do that which would restrict and cramp the reasonable and ordinary powers which local superintendents in charge of a business are generally invested with, in the absence of an agreement or an instruction that such powers were thus limited. In re Hall, 2 U. S. Employees' Compensation Commission Report (July 1, 1917, to June 30, 1918), 251; Warfield Natural Gas Co. v. Muncy, 244 Ky. 213 (50 S. W. 2d, 543). *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 688 (118 S. E. 786) ; *United States Fidelity & Guaranty Co.* v. *Maddox,* 52 *Ga. App.* 416, 419 (183 S. E. 570). The order of the superior court, setting aside the award of the Industrial Board denying compensation, is therefore
*Affirmed. Broyles, C. J., and Guerry, J., concur.*