29521. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *v.* SMITH *et al.*

582

DECIDED JUNE 6, 1942.  REHEARING DENIED JULY 10, 1942.

*Neely, Marshall & Greene,* for plaintiff in error.

*W. A. Hart, W. D. Sanders, T. E. Drake, E. B. Lovell,* contra.

SUTTON, J.  The present case involves a claim by Leonard D. Smith for compensation under the workmen's compensation act against his employer, Winton Mills, and St. Paul Mercury Indemnity Company (hereinafter referred to as the indemnity company) and American Mutual Liability Insurance Company (hereinafter referred to as the mutual insurance company), as carriers.  The director found that the claimant's injury arose out of and in the course of his employment with the Winton Mills and made an award against the employer and the mutual insurance company, but not against the indemnity company.  This award was affirmed by the board, and on appeal the award of the board was affirmed by the superior court of Carroll County.  The exception is to that judgment, and it is contended by the plaintiff in error that the injuries of the claimant did not arise out of and in the course of his employment, and that if he was entitled to compensation the award should have been made against the employer and the indemnity company alone, and if not alone against the indemnity company, as carrier, should have been against the two carriers jointly.

The evidence was substantially as follows: Winton Mills is a trade-name under which a partnership with headquarters at Athens, Georgia, operates a mill at Banning, Georgia, and another at Fort Valley, Georgia.  The indemnity company, at the instance of H. B. Upchurch, a partner in charge of the mill at Banning, issued, on March 14, 1941, its workmen's compensation policy to the Winton Mills covering its operations at Banning.  On May 5, 1941, the mutual insurance company, at the instance of the Athens office, issued its policy to the Winton Mills, covering not only the operations at Banning but also those at Fort Valley.  It appears that this double coverage was inadvertent.  The claimant, at the time of his injury, had been employed for about two months as a sweeper at the Banning mill.  His claim for compensation was based on injuries he sustained on June 10, 1941.  On that date he

was instructed by one Grover Towns, a "section boss" in charge of the repair of the machinery in the Banning mill, to cease sweeping on the third floor and to haul some yarn to the basement. The claimant put two or three boxes of yarn on the elevator, which was operated by ropes by hand, and using the elevator and riding thereon conveyed the boxes to the basement, the largest box of which he had been instructed to leave in the basement. When the elevator stopped at the basement level he removed the largest box and placed it ten to fifteen feet away from the elevator. He then turned around and noticed that the elevator was moving upward. It appeared from the evidence that one of the employees on the second floor had pulled the elevator rope in order to bring the elevator to the second floor, although the claimant did not know that this caused the elevator to move upward. The elevator had proceeded to a height equal to about that of the claimant's waist, a young man about 6 feet 1 inch tall. As he stated on cross-examination, "After I seen it started I kind of made a jump. I hit on my knees . . on the edge. . . I tried to pull my feet on and it caught me." The claimant's knees slid backwards and he was caught on his stomach, and in this position was pinned between the elevator floor and the floor above the basement when his body reached it and was severely injured.

The claimant was employed by J. M. Jordan, superintendent of the Banning mill, and he testified that when he employed him he told him not to ride on the elevator under any circumstances, and that his duties did not require that he use the elevator, and that Towns, who directed the claimant to haul the yarn, had no authority to change his instructions. It was the custom, when one used the elevator to haul goods or material to the basement, to place it upon the elevator, which was slowly operated by pulling a rope, and then to descend the steps and meet the elevator as it reached the basement and remove the goods or material. The claimant denied that he was told not to ride the elevator. The employee who pulled the rope at the time of the claimant's injury testified that he had on occasions, although contrary to instructions, ridden on the elevator, and another witness testified that he had seen an employee, one Gore, riding on it. This witness testified that he was on the elevator at the time the claimant was endeavoring to climb upon it, although the latter testified that he did not see him. The

witness had gone to the mill to look for some one, and got upon the elevator in the basement while the claimant was off of it.

H. B. Upchurch, in charge of the Banning mill, testified that because at one time the elevator had fallen he had given instructions against its being ridden by any one and had put written notices to that effect about the mill, one such notice being posted at or near the elevator shaft, but he was unable to swear that at the time of the claimant's injury the notice still remained near the elevator. From the fact that to certain written statements obtained from the claimant by the indemnity company he could not sign his name, but only placed his hand to a pen and made a cross mark, it is inferable that he could neither read nor write. Upchurch testified that Towns had no authority to overrule the instructions of the mill superintendent as to not riding on the elevator, but that Towns could stop the claimant from sweeping and order him to haul yarn.

The single director found as a fact that the claimant's injury arose out of and in the course of his employment. We think that there was sufficient evidence to authorize this finding. It is contended by the plaintiff in error that the act of the claimant was wilful misconduct and that recovery is prohibited under Code § 114-105 which provides, among other things, that "No compensation shall be allowed for an injury or death due to the employee's wilful misconduct." While it may well be said that the claimant's act was negligent in attempting to jump upon the elevator when it was moving, though slowly, and when the floor of the elevator had reached a height about equal to his waist line, the distance between the basement and the next floor being only 8 or 10 feet, and there remaining only a few more feet between the elevator floor and the next upper floor of the building, we can not conclude that as a matter of law his act amounted to wilful misconduct or the intentional breach of the company's rule against riding on the elevator. The elevator was apparently for use, and the claimant was not aware, so far as the evidence shows, that it had fallen on one occasion. He had been at work only about two months. One with authority to do so, as the director might find, had instructed him to haul some yarn to the basement. Freight elevators are used for such purposes, and it doubtless seemed to the claimant that the elevator in question was a proper and suitable instrumentality to use

and ride upon in taking the yarn to the basement. According to his testimony, he had not been instructed not to ride upon it. He used the elevator ·in hauling the yarn to the basement, removed a large box. of yarn from the elevator, and the two remaining boxes were to be returned to a higher level. His work of hauling would not be complete until he had started the elevator with the boxes upward. If, as he conceived, he had the right to ride the elevator to the basement, he might reasonably conclude that he had the right to return on the elevator with the two remaining boxes. He saw the elevator moving upward and endeavored to accompany it and the boxes. He failed in the attempt to get upon the elevator in time to avoid coming in contact with the upper floor. His judgment was undoubtedly bad for one of his age, twenty-one years, but his conduct was not necessarily wilful misconduct. According to the testimony of one witness, the claimant, when he failed to pull himself upon the floor of the .elevator, endeavored without success to stop it by pulling upon the ropes.

The director found that "from the undisputed evidence there was double coverage at the time of the accident" but fixed liability against the mutual insurance carrier only, reciting in his order that "as to the liabilities, rights, and equities between these two insurance carriers it appears to the director, in the circumstances, to be in favor of the St. Paul Mercury Indemnity Company as to nonliability for this accident, as they lost the insurance, and then to have to compensate for an accident on a policy that had been actually cancelled would appear inequitable if not illegal." As to the double insurance and purported cancellation of one of the policies the facts were as follows: The insurance policies of the employer were kept in its office at Athens, Georgia. On March 14, 1941, a policy had been taken out with the indemnity company covering the operations of the mill at Banning, Georgia. On May 5, 1941, another policy had been issued by the mutual insurance company. This covered operations of the mill at Banning, Georgia, and the mill at Fort Valley, Georgia. After assuming active duties as one of the partners about June 1, 1941, including the supervision of the insurance policies of the partnership, Alex Gaines discovered that the two above-mentioned policies constituted double coverage. On June 11, 1941, while ignorant of the fact that the claimant had been injured at the Banning mill on the previous day, he wrote a

letter to the agent of the indemnity company at Newnan, Georgia, with instructions to cancel the indemnity company's policy which he enclosed with the letter. After the letter had been mailed he was informed by telephone of the claimant's injury on the previous day, and he then sought unsuccessfully to recall the letter from the mails. It reached the Newnan agent the following morning. Some adjustment was necessary on the amount of the premium, and the agent informed Gaines, who visited him on June 12, 1941, that the status of the policy could not be determined without a pay-roll audit. It is inferable from the record that the policy was issued for a stated premium, which was subject to adjustment according to pay-roll changes, and no report on the partnership pay-roll had been made to the indemnity company since May 5, 1941, the date when the American Mutual Liability Insurance Company policy was issued. The agent of the St. Paul Mercury Indemnity Company testified that the policy issued by it was in effect at the time he received, on June 12, 1941, the request of the employer for cancellation, and that it was cancelled later as of May 5, 1941, the premium charge being adjusted after a pay-roll audit had been made as from March 14, 1941, to May 5, 1941. It was because of this fact that no premium charge was collected for any period after May 5, 1941, by that insurance company in the adjustment of the premium charge. The director was evidently induced by this fact to find that no liability existed against that carrier. The fact remains, however, that as of the date of the claimant's injury the policy was in full force and effect as to a subject matter of insurance or coverage to which the policy of the other carrier also applied, and no agreement between the employer and the one carrier can give such a retroactive effect to the cancellation of the policy as to enlarge the liability of the other carrier with respect to a compensable injury occurring while both policies were in force. Accordingly, the director erred in finding that the only carrier liable under the award against the employer was the plaintiff in error.

"The Court of Appeals is clothed with power to direct any order necessary for the proper adjudication of a cause. It may give any direction to a cause pending in the court below, which may be consistent with the law and justice of the case, including the power of directing a specific, final disposition of the case." *Finley* v. *Southern Railway Co.*, 5 *Ga. App.* 722 (64 S. E. 312). See also *Gray*

v. *Watson,* 54 *Ga. App.* 885 (189 S. E. 616). It being shown by the record that the director was authorized to find that the claimant was entitled to compensation and that there was double coverage at the time of his injury, and in order to make a final determination of the case under the authorities hereinbefore mentioned, the judgment of the superior court is reversed, with direction that the case be recommitted to the Industrial Board to enter an award in favor of the claimant against the employer and also against the two insurance carriers.

*Judgment reversed, with direction. Stephens, P. J., and Felton, J., concur.*