30804.   LIBERTY MUTUAL INSURANCE CO. *et al.* *v.* SCOGGINS.

DECIDED MARCH 15, 1945.   REHEARING DENIED MARCH 28, 1945.

*Neely, Marshall & Greene,* for plaintiffs in error.
*James Maddox,* contra.

FELTON, J. ■ The evidence conclusively shows that the claimant, upon no personal errand or mission of his own, went to the first floor from the second in the lap conveyor, seeking instructions concerning the performance of the job to which he had been assigned; that he had never worked at this job before and was inexperienced in the operation of the lap conveyor; and that the employer at the time of assigning him to the job failed to give him instructions concerning the performance of the work. Certainly he was furthering his employer's business in seeking information which would enable him to perform the task to which he had been assigned. Thus, without more, we must conclude that the accident and injury resulted in the course of and out of the employment. It is contended, however, by counsel for the defendant that in order to meet the requirements of the definition of "arising out of and in the course of the employment" (Code, § 114-102), the claimant must be shown to have sustained his injury at a place where he reasonably could have been in the performance of his duties, citing *Employers Liability Assurance Corp.* v. *Woodward,* 53 *Ga. App.* 778 (187 S. E. 142), and that he could not reasonably have been expected to be in the conveyor shaft, an admittedly dangerous place, in the performance of his duties, and that by entering this dangerous place he placed himself outside the scope of his employment. From an examination of the *Woodward* case, we observe that the rule stated there is a quotation from the opinion of Judge Bell in *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (2), 688 (118 S. E. 786), and there Judge Bell relies upon Fournier's Case, 120 Me. 236 (113 Atl. 270, 23 A. L. R. 1156), as authority. The Fournier case is strikingly similar in principle and fact to the instant case, but compensation was denied there because the employee had been expressly forbidden to use a rope hoist in going between floors, and testified to that effect at the hearing. Such testimony is nowhere to be found in the present case. The claimant repeatedly denied knowledge of any rule against using the conveyor to ride upon, and nowhere is this testimony contradicted. The record shows, however, that the employer knew of the practice of the employees' using the lap conveyor in going back and forth between floors, and while he had prohibited its use for this purpose by discharging, in individual cases, those so using it, he had not made its prohibition generally

known either by publishing a rule against the use of the conveyor in such manner, or by posting signs at or near the conveyor forbidding its use. Moreover, the last instance wherein he had indicated his disapproval had occurred more than a year prior to the accident, and in view of the fact that it is shown that the practice had continued and that the claimant had seen, at least on two occasions, other employees using the conveyor for the purpose to which he himself put it, we cannot say as a matter of law that his entering the conveyor shaft was unreasonable or constituted wilful misconduct such as to bar his recovery. *American Mutual Liability Ins. Co.* v. *Smith,* 67 *Ga. App.* 581 (21 S. E. 2d, 343). The case would not come under the provisions of the Code, § 114-105, which provides: No compensation shall be allowed for injury or death due to the employee's wilful misconduct, including intentionally self-inflicted injury, or growing out of his attempt to injure another, or due to intoxication or wilful failure or refusal to use a safety appliance or perform a duty required by statute, or the wilful breach of any rule or regulation adopted by the employer and approved by the Industrial Board (State Board of Workmen's Compensation), and brought to the knowledge of the employee prior to the accident. The burden of proof shall be upon him who claims an exemption or forfeiture under this section; and the rulings of this court in *Shiplett* v. *Morgan,* 58 *Ga. App.* 854 (200 S. E. 449), *American Mutual Liability Ins. Co.* v. *Hardy,* 36 *Ga. App.* 487 (137 S. E. 113), and *Integrity Mutual Casualty Co.* v. *Jones,* 33 *Ga. App.* 489 (126 S. E. 876), which hold that when a rule is not approved by the board (and no such rule had been approved by the board in this case), the violation is not wilful misconduct. On the question of the necessity of prior knowledge of the rule by the employee, see *American Mutual Liability Ins. Co.* v. *Smith,* supra.

■ As another defense, counsel for the defendant seek to introduce the doctrine of "added risk" or "wanton incurrence of special danger," citing 71 C. J. 403 (e), where it is stated: "An accident can not be said to arise out of the employment where it is due to a new and added peril to which the employee by his own conduct has needlessly exposed himself, unless there has been acquiescence by the employer." It is striking that Corpus Juris cites some thirty-five cases as authority for this doctrine, everyone of which

is an English case. The English courts inadvertently · started the expression, "incurs a danger of his own choosing" in the much-cited case of Brice *v.* Lloyd (1909), 2 K. B. 804, which has led to much confusion in the English compensation cases. If a court wishes to deny an award on the ground that the injury did not arise out of the employment there is adequate language available without resorting to the wrongful use of the words "added risk." Horovitz On Workmen's Compensation, p. 131. As Justice Frankfurter said in his discussion of "assumption of risk" in Tiller *v.* Atlantic Coast Line R. Co., 318 U. S. 54 (1943) (63 Sup. Ct. 444, 87 L. ed. 610, 143 A. L. R. 967), added risk began life as a literary expression; its felicity led to a lazy repetition, and repetition soon established it as a legal formula, indiscriminately used to express different and sometimes contradictory ideas. In Associated Indemnity Corp. *v.* Industrial Accident Commission, 18 Cal. 2d, 40, 46 (1941) (112 Pac. 2d, 615), where the superintendent rode on a non-passenger switch engine, rather than walk, and sustained a broken leg in stepping off to avoid steam, Carter, J., said: "The doctrine urged ·by the petitioner [added risk] must be applied with extreme caution for the reason that it is barely distinguishable from the rules of contributory negligence and assumption of risk which are not applicable in compensation cases. Indeed, it may well be asserted that the doctrine of 'added risk'— that is, where an employee assumed a risk greater than that usually incident to his employment, he can not recover—can not be followed in California because it is in effect nothing more than contributory negligence." Our compensation act specifically obliterated the common-law defenses of negligence and assumption of risk (Code, § 114-206), and did not mean to leave open the identical defense for the employer by changing its name, and this is so well known as to require no citation of authority. It is entirely true that the employer may define the limits of the employee's sphere of employment by prohibitions, rules, and regulations, and if the employee violates these he is outside the scope of his employment, and any injury sustained outside the scope ⸗ the employment is not compensable. In the instant case, however, the employer had not to the knowledge of the employee so limited the employee's sphere of employment by publishing a rule, or otherwise prohibited the use of the conveyor to ride upon, and it

is clearly shown that, to the knowledge of the claimant, it had been the practice of the employees to make such use of the conveyor. We are of the opinion, therefore, that the finding of the board that the injury arose out of and in the course of the employment was authorized and that the court below did not err in affirming the award.

*Judgment affirmed.* *Sutton, P. J., and Parker, J., concur.*

### ON MOTION FOR REHEARING.

FELTON, J. In a motion for rehearing counsel for the defendants insist that it is necessary to a proper understanding of the case that the court distinguish the present case from that of *Thompson-Starrett Co.* v. *Johnson,* 174 *Ga.* 656 (163 S. E. 745). In that case the Supreme Court, in reversing the holding of the Court of Appeals in *Johnson* v. *Thompson-Starrett Co.,* 42 *Ga. App.* 739 (157 S. E. 363), and reinstating the award of the board, held in effect that when the employee on his way home from work voluntarily rode past the point to which the employer under its implied contract of employment had furnished transportation, making the transportation an incident of the employment, the employee was outside of his employment, as the duty of the employer was finished. Thus, when the employee by his own act, voluntarily leaped from the moving truck to his death, it was not this act of leaping from the truck which placed him outside of his employment. He was already outside of his employment when he left the point at which he customarily descended from the truck of the employer and was unquestionably not upon any business for the employer. This is obvious from the award of the board which, as stated above, was reinstated by the Supreme Court and made the law of the case. At page 54 of the record of the award in that case it is said: "When the employee failed to get off at the place where it was customary for him to get off and rode past this place, we believe that the duty of the employer was finished, and that the act of riding further was voluntary on the part of the employee, and the accident was brought about by his own act and outside of his employment."

In stating that the English courts inadvertently started the doctrine of added risk the court was not unaware of those early holdings of the courts of California, Illinois, Iowa, Louisiana, Massachusetts, Minnesota, and Oregon, based on the English decisions,

to which counsel refers us. Those decisions were made early in the history of workmen's-compensation laws when there was still a tendency to revert to common-law principles, which accounts for the anachronisms in the decisions of those states under the workmen's-compensation laws. The more enlightened philosophy of compensation was better understood and applied in the later decisions of the courts of those states. The case of Pacific Employers' Insurance Co. v. Industrial Commission, inadvertently referred to by counsel as from the Supreme Court of California is in fact from the District Court of Appeals, and upon reaching the Supreme Court of California (Pacific Employers' Insurance Co. v. Chavez, 5 Cal. 2d, 247, 54 Pac. 2d, 701), was specifically repudiated when the higher court reversed the district court. Associated Indemnity Corp. v. Industrial Accident Commission (cited in the decision above) again repudiates the added-risk doctrine when the court said: "It is worthy of note that by the weight of authority, even the fact that an injury was received by an employee while violating an instruction or rule of his employer, does not necessarily prevent the injured employee from recovering on the ground that the injury did not arise out of or occur in the course of the employment. See cases collected in 119 A. L. R. 1409, 83 A. L. R. 1211, 58 A. L. R. 198, 26 A. L. R. 166, and 23 A. L. R. 1161. This court discussed that rule in Pacific Employers' Insurance Co. v. Chavez, supra. If such is the law, then certainly, in such a case as this, where there was no prohibition against riding on the engines, it was frequently done by the employees, and it occurred on premises which were used in part for the conduct of the employer's business . . there should be little doubt that the injury is compensable." For a view of Minnesota's change in position, see Prentice v. Twin City Wholesale Grocery, 202 Minn. 455 (278 N. W. 895). The other states have either abandoned the doctrine or refused to expand it further than did their early decisions.

Where an employee while on the premises of his employer and while furthering the business of the employer, negligently enters a dangerous conveyance or place and injury ensues, the injury arises out of and in the course of the employment. If the employee while furthering the employer's business does an act rashly, under circumstances showing deliberation and wilfulness, and amounting to the intentional infliction of injury upon himself, the

injury is not compensable, even though strictly arising out of and in the course of his employment. It is not necessarily the place where the injury occurs which determines compensability but the nature of the act. If the injury is due to negligence it is compensable; if it is due to wilfulness it is not. The court of course recognizes the difference between a defense based on wilful misconduct and one based on the contention that the injury arose outside of the employment. No rule can be stated drawing a line between injuries arising out of employment and those arising outside of it. Every case stands on its own facts. The place where an injury occurs must sometimes be considered in determining whether an injury arises out of employment or not, but there are other questions, also, such as how and why and under what circumstances the employee was in a particular place.

*Rehearing denied.*