17225.   MARYLAND CASUALTY COMPANY *et al. v.* PEEK.

Where one is employed as a drapery-hanger and, in the discharge of his duties, is required to travel upon a train from one town to another, his exposure, while traveling upon a train, to an unprovoked assault by a passenger, who, after the manner of a madman or lunatic, jumps

Workmen's Compensation Acts,—C. J. p. 72, n. 69, 72; p. 73, n. 80; p. 74, n. 86, 87; p. 75, n. 88; p. 77, n. 98 New; p. 78, n. 3.

up from his seat and begins shooting at the passengers, is not a risk incident to the employment, and an injury resulting in the death of the employee as a result of such an assault is not an injury which arises out of the employment, and therefore is not compensable.

DECIDED MARCH 5, 1927.

Appeal; from Fulton superior court—Judge E. D. Thomas. February 12, 1926.

Application for certiorari was made to the Supreme Court.

This is a claim against the W. E. Browne Decorating Company and the Maryland Casualty Company, the insurance carrier, by the widow of Ray E. Peek, for compensation under the workmen's compensation act (Ga. L. 1920, p. 167) for her husband's death. Upon the hearing before the commissioner it appeared from uncontradicted evidence that Peek, the deceased, was an employee of the W. E. Browne Decorating Company, of Atlanta, Georgia, and, as such employee, came under the workmen's compensation act. He was employed as a drapery-hanger and superintendent of the drapery room, and worked for a salary of $40 a week. His duties required him to go from Atlanta to other points, to which he was sent by his employer, to hang and install draperies, and in making such trips he went back and forth upon railway trains. While occupying a coach of the Southern Railway on his way to Atlanta from Durham, N. C., to which latter place he had been sent by his employer for the purpose of installing draperies in a residence in Durham, one of the passengers, who occupied the same coach with him and who had become incensed on account of an argument between himself and the conductor of the train when the conductor came through to take up tickets, jumped up and began shooting in the coach. He shot Peek twice in the head, inflicting wounds from which Peek died, and also shot another passenger by the name of W. F. Flindt, who recovered. The shooting occurred about fifteen or twenty miles out from Spartanburg, S. C., just after the conductor had come through to take up tickets. There had been no conversation between Peek and the person who did the shooting, after the train left Spartanburg. There is no evidence as to what happened prior to the train's leaving Spartanburg. So far as appears from the evidence, Peek and Flindt were strangers to the person who did the shooting. Neither Peek nor Flindt had taken part in the argument with the conductor. Peek, when shot, was reclining in his seat, reading a book, with his head resting on the

arm of the seat, toward the aisle, the back of his head being toward the person who did the shooting.

The commissioner concluded, from the evidence, that Peek's death resulted from injuries arising out of and in the course of his employment, and awarded compensation. This award was affirmed upon an appeal to the superior court. The judgment of the superior court was excepted to by both defendants.

*Underwood & Haas, E. Smythe Gambrell,* for plaintiffs in error.
*Reuben R. & Lowry Arnold, Edward C. Hill,* contra.

STEPHENS, J. (After stating the foregoing facts.) It appears conclusively, from the evidence, that the shooting of Peek did not grow or arise out of his employment. The assault upon him had no connection whatever with his employment. The risk of being exposed to an unprovoked assault by one seemingly insane was not a risk peculiarly incident to Peek's employment. All persons, whether in an employment similar to that of Peek or in any other employment, are subject to such a risk anywhere in the company of others. We adopt the legal conclusions expressed in the opinion of Hon. R. C. Norman of the industrial commission, who passed upon the application for compensation of the other passenger who was shot at the same time as Peek, namely W. F. Flindt. From Commissioner Norman's opinion denying compensation to Flindt we take the following, which is applicable to the case here under consideration:

"The terms 'in the course of' and 'out of' are not synonymous. Both must concur to render the case a compensable one. An accident arises 'out of' the employment when it arises because of the employment, as when the employment is a contributing proximate cause. *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (2 *a*) (118 S. E. 786). There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of some hazard connected with the employment. The danger which the employee is exposed to may originate either from the employment or outside of it, *if the exposure is peculiar to it.* Corpus Juris, Workmen's Compensation Acts, p. 74, section 65. It is not enough to say that the accident would not have happened if the servant had not been engaged in the work at the time, or had not been in that place. It must appear that it resulted from something he was doing in the course of his work,

or from some peculiar danger to which the work exposed him. Archibald *v.* Ott, 77 W. Va. 448 (87 S. E. 791, L. R. A. 1916D, 1013). If the injury can be said to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which can not fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. In re McNickol, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 306). The nature of claimant's work made it necessary for him to travel by train. While on the train he was in the course of his employment. He would therefore be protected under the compensation act against any accident incident to the running of the train. Had he been injured by a derailment, a collision, a breaking through a trestle or bridge, or other travel accident, his right to compensation would be clear. But the shooting of claimant by an infuriated passenger, whether sane or insane, the cause of the shooting being in no wise connected with nor growing out of his employment, was not a peril of the service, nor was it reasonably incidental to his employment. The most that can be said is that the injury would not have occurred but for claimant's employment bringing him to the time and place of the altercation between the conductor and the passenger which precipitated the shooting. According to the authorities above quoted and numerous other authorities which might be cited, this is not sufficient. There must be a causative connection between the accident and the employment. It must arise 'out of' the employment. As was said in Plumb *v.* Cogden Flour Mills, 7 B. W. C. C. (1), 'It is not an assault which had its origin in the nature of the employment, nor was it in any way whatsoever connected with the master's work.' The 'lightning cases' passed upon by the various courts are in point. Where the natural hazard from lightning is greater by reason of the nature of the employment, the cases have been held compensable, but when the nature of the employment subjected the servant to no greater risk than others in the neighborhood, compensation has been denied. Claimant in the instant case was not by reason of his employment exposed to the danger of being

shot, in a greater degree than any other passenger upon the particular train. Another passenger was actually shot and killed. There was no causative connection between the employment and the shooting, and it must therefore be held in this case that the injury did not arise out of and in the course of the employment, and compensation be denied."

See, in this connection, *Marlin* v. *Georgia Casualty Co.*, 157 *Ga.* 909 (122 S. E. 881), and the recent case decided by the Supreme Court of Louisiana, of Conaway *v.* Marine Oil Co., (La.), 110 So. 181, wherein it is held that a workman who is shot at his place of business by a bullet accidentally discharged from the pistol of a fellow employee is not entitled to compensation.

We therefore conclude that Mrs. Peek, the widow of the deceased, under the undisputed evidence was not entitled to compensation, and that the judge of the superior court erred in affirming the judgment of the commissioners awarding compensation.

*Judgment reversed. Jenkins, P. J., concurs. Bell, J., dissents.*