20675.  UNITED STATES FIDELITY & GUARANTY COMPANY *et al. v.* WAYMICK.

DECIDED OCTOBER 7, 1930.

*Lawrence & Abrahams,* for plaintiffs in error.
*Bouhan & Atkinson, Spence M. Grayson, H. Mercer Jordan,* contra.

LUKE, J.  Mrs. M. G. Waymick claimed compensation for the death of her husband, Mr. M. G. Waymick.  Lindsay & Morgan Company was the employer, and the United States Fidelity & Guaranty Company the insurance carrier.  Commissioner Land denied compensation; the industrial commission reversed his finding and awarded the applicant compensation of $12.75 a week for not more than three hundred weeks, and the judge of the superior court affirmed the award.  The question for determination is

whether or not the evidence sustains the conclusion reached by the commission that the accident arose out of and in the course of the employment.

A fair general statement of the facts of the case appearing from the record follows: Ossabaw Island, which is near the City of Savannah, was the private property of Dr. Torrey and the place of his winter residence. Dr. Torrey owned and controlled the island exclusively, and the only means for reaching it was the private boat of the doctor. The superintendent lived near the boat-landing, and the eating and rooming place of the doctor's regular employees was about one hundred and fifty yards from the superintendent's house. For several years Lindsay & Morgan Company had renovated Dr. Torrey's residence for his homecoming. Said residence was about three-quarters of a mile or a mile from the boat-landing. Lindsay & Morgan Company did interior decorating and had its place of business in the City of Savannah. Mr. Waymick was a painter and had been working for Lindsay & Morgan Company for several years. On the occasion in question he was in control of other employees of said company sent to work at Dr. Torrey's residence. All of said employees were paid by the week, and all of them were housed and fed by Dr. Torrey at the sleeping and eating place of his regular employees near said boat-landing, he being obligated to board said employees while they were working on the island. The road leading from the landing to Dr. Torrey's residence was a little rough, and Mr. Waymick was killed as the result of accidentally falling from an automobile-truck owned by Dr. Torrey while going from said residence to his sleeping and eating quarters after the day's work was over.

Mr. E. G. Rogers testified: that he was vice-president of Lindsay & Morgan Company; that his company had been renovating Dr. Torrey's residence for about four years; that witness would get a list of the things Dr. Torrey wanted done from his housekeeper and send his men out to do the work; that his employees were working for Lindsay & Morgan Company under Dr. Torrey; that said employees went to the island on Dr. Torrey's boat, and that while being so transported they were drawing pay; that Dr. Torrey was obligated to furnish said employees with meals and a place to sleep; and that witness had been on the island and walked from the boat-landing to Dr. Torrey's residence, and knew that his employees had to go

back and forth to their work. We next set out some of the questions propounded to the witness Rogers, with his answers thereto. Q. "You expected him (Dr. Torrey) to furnish transportation?" A. "I really can't say." Q. "You had no objections?" A. "No, we did not give that matter any consideration." By the commissioner: Q. "Mr. Rogers, did the question as to whether he (Waymick) got transportation or not affect his wages?" A. "No." Q. "Not the general rule, but this particular transaction?" A. "There was nothing said about transportation." Q. "Nothing about transportation from the boat-landing—that was not taken into consideration in the amount of the wages?" A. "No." Q. "What was his regular weekly wage?" A. "$45 when he was out or in Savannah. When out and had an unusual expense, it was added to it. I expected to pay his board and lodging." Q. "As to how he got to his work, you have nothing to do with that?" A. "Doctor transported him." Q. "That was part of the agreement; that did not lessen the wage by the fact that Dr. Torrey agreed to do it; you were paying him a regular weekly wage?" A. "That was entirely his own lookout." By counsel for the applicant: Q. "You used him (Mr. Waymick) for out-of-town work . . in Aiken?" A. "Yes." Q. "And you paid his expenses?" A. "Yes." Q. "And if it was necessary to employ a conveyance, he could have added this to his expenses?" A. "He never had to pay, but we would have." Q. "If Dr. Torrey's boat had not been furnished, you would have hired one and furnished to him?" A. "Yes." Q. "And when they got there they were placed in a boarding-house, and Dr. Torrey's house was a mile away?" A. "Yes." Q. "And there was no other mode of transportation to get to their work from the eating-house other than the conveyance furnished by Dr. Torrey, unless they chose to walk?" A. "Yes." Q. "And all the time they were in your employment?" A. "Yes." Q. "If he had not furnished meals and you had been forced to, you would have billed Dr. Torrey?" A. "Yes."

Mr. A. Lee testified: that he was working for Lindsay & Morgan Company at Ossabaw Island when Mr. Waymick was injured; that the employees of that company ate and slept near the landing and worked at the "main house," which was about a mile away; that meals were furnished the workmen as part of their pay; that sometimes they would walk to their work, and sometimes would ride

on the truck; that the workmen did not hire the truck and did not pay for riding on it; that the truck was used by the head-gardener of Dr. Torrey "to carry himself and assistant from his place and carry material;" that no car was particularly assigned to transport the employees of Lindsay & Morgan Company; that said employees had no right to demand that they be transported on said truck; that their riding was a "courtesy;" that witness and his coemployees had stopped work at 5:30 o'clock in the afternoon, and were riding in said truck to get their supper at the landing; that their supper hour was 6 o'clock; that Mr. Waymick fell out of said truck just before they reached their eating place; that on other occasions Lindsay & Morgan Company had furnished its employees transportation to and from their meals; and that witness had worked at places where it was necessary to go back and forth from lunch, and that he charged the expense of so doing to Lindsay & Morgan Company. Mr. W. E. Keener testified: that he had been superintendent for Dr. Torrey for a little over three years; that he never gave orders to the employees of Lindsay & Morgan Company; that the truck from which Mr. Waymick fell was one he had turned over to Mr. Jones, the driver, to haul off dead leaves and trash; that the truck was for "our men;" that it would be quite a job for them to go back and forth to their work without the truck; and that the employees of Lindsay & Morgan Company could ride on the truck "if they wished." Mr. B. R. Stauffer testified: that he was head-gardener for Dr. Torrey; that the truck furnished him was out of repair and he was using an old truck in its stead; that Mr. Jones was driving the truck when the accident occurred; that Mr. Jones and several negroes were working under witness at the Torrey residence; that witness did not make a practice of transporting the employees of Lindsay & Morgan Company, but that if they were ready and wanted to ride, the truck would take them; and that when Mr. Waymick fell out of the truck it was running slowly on a part of the road that was undulating. This witness also testified in effect that the truck made pretty regular trips to and from the residence of Dr. Torrey three times a day, and that the employees of Lindsay & Morgan could ride when they wanted to.

To warrant a recovery in this case the injury must have arisen both out of and in the course of the employment. "An injury arises 'in the course of employment,' within the meaning of the

workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. . . An accident arises 'out of' the employment when it arises because of it, and when the employment is a contributing proximate cause. . . If the work of an employee or the performance of an incidental duty involves an exposure to the perils of the highway, the protection of the compensation act extends to the employee while he is passing along the highway in the performance of his duties." The foregoing is quoted from the second headnote of the decision in *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 689 (118 S. E. 786). See also *Ga. Ry. & Power Co.* v. *Clore,* 34 *Ga. App.* 409 (129 S. E. 799), and the leading case of McNicol, 215 Mass. 498 (1) (102 N. E. 697, L. R. A. 1916A, 306), quoted in both of the foregoing Georgia cases. The following cases also bear upon the questions of law presented by the record in this case: *Maryland Casualty Co.* v. *Peek,* 36 *Ga. App.* 557 (137 S. E. 121); *Holliday* v. *Merchants & Miners Transportation Co.,* 32 *Ga. App.* 567 (124 S. E. 89).

In making its award in this case, the industrial commission said: "Waymick met his death while going from the place he was working to the place where he was to eat, and while being transported on a vehicle owned by Dr. Torrey. The conditions under which he was working were such that he was in effect engaged in his employment during the time that he spent on the island. Since the island was entirely under private ownership, he could only eat and sleep where directed by Dr. Torrey or Dr. Torrey's foreman or manager. It is not clear that the car in which he was riding at the time he met his death was regularly furnished him and other employees of Lindsay & Morgan Company for transportation. However, it was in furtherance of his duties in getting to and from his work that he was riding in the car. In the opinion of the full commission it was an accident arising out of and in the course of the employee's employment."

The facts of this case differentiate it from any case to which our attention has been called. However, it has been said that compensation acts "should be liberally and broadly construed, to effect their beneficent purposes." See *New Amsterdam Co.* v. *Sumrell,* supra.

Furthermore, if there is any evidence to support the award, this court will not set it aside. We think that the evidence supports the award of the industrial commission, and we hold that his honor of the superior court did not err in affirming that award.

Before concluding this opinion we shall advert briefly to the case of *Norwich Union Indemnity Co.* v. *Johnson, 36 Ga. App.* 186 (136 S. E. 335), which is cited by counsel for plaintiffs in error as controlling. In that case the driver of the truck could exercise his discretion in allowing the employees to ride, and "there was no objection to their riding on the trucks on their way to work if the truck was not loaded and was not running at the time of catching it." At the time the employee attempted to board the truck and was killed, the truck was both loaded and moving, and the evidence did not show that the driver of the truck indicated in any way that said employee could ride. Clearly the accident did not arise out of the employment. It is equally apparent from an examination of the facts of the two decisions cited in that case that those decisions do not control the case at bar. We refer to *Ga. Ry. & Power Co.* v. *Clore, 34 Ga. App.* 409 (129 S. E. 799), cited above, and *Ga. Casualty Co.* v. *Martin,* 157 *Ga.* 909 (122 S. E. 881).

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*