## 27144.  UNITED STATES FIDELITY & GUARANTY CO.
### *et al. v.* SKINNER.

DECIDED DECEMBER 3, 1938.

*Abrahams, Bouhan, Atkinson & Lawrence,* for plaintiffs in error.
*Edward F. Taylor, William H. Sanders,* contra.

SUTTON, J.  W. B. Skinner, an employee of the Southern Fertilizer & Chemical Company, received an injury in an automobile accident on June 19, 1937, from which he died three days later. His widow filed a claim for compensation with the Industrial Board, and an award was rendered in her favor by the single director, which, on appeal, was approved by the full board and was affirmed by the judge of the superior court.  The employer and the insurance carrier excepted.  The question presented for determination is whether the accident, which resulted in Skinner's death, arose out of and in the course of his employment.

The record shows that W. B. Skinner was employed by the Southern Fertilizer & Chemical Company as a field representative or traveling salesman, and was paid a salary of $150 per month and traveling expenses, including meals when away from home; he lived in Macon and was not allowed expenses while at home; he was furnished an automobile, and the expenses of its operation were paid by his employer, and he was allowed to use the car for personal purposes if he desired; traveling salesmen of the company had a regular territory, and Skinner's duties were to solicit sales for and sell the product of his employer and to make collections; when and how the salesmen worked was not a matter of concern to the company, if they performed their work well—what was required of them was results; C. C. Maile of Atlanta was also employed by this company as a traveling salesman, and it was his understanding that he had supervision over Skinner—their duties and the nature of their work were the same and they had the same kind of positions; the headquarters of the fertilizer company were in Savannah, and W. D. Cook who lived there was the vice-president of the company and in charge of the sales operations thereof, and

was the superior officer of Maile and Skinner; the traveling salesmen were sometimes called to Savannah over the week-end for business conferences with Mr. Cook, the vice-president, which would sometimes take place on Sundays, depending on the convenience of Mr. Cook; just prior to Saturday, June 19, 1937, Cook communicated with Maile in Atlanta to contact Skinner and for them to go to Savannah that week-end for a conference with him, and in compliance therewith Maile and Skinner went to Savannah on Saturday, June 19, 1937, leaving Macon about 10 o'clock a. m., and, after attending to business for the company on the way down, arrived in Savannah about 3 p. m.; they registered at the Savannah Hotel, took a bath and cleaned up; they had not eaten lunch on the way down, but had decided to wait and eat a sea-food dinner after arriving at Savannah, as they liked to do on their visits there; Tybee Beach is a seaside resort on the Atlantic Ocean, eighteen miles east of Savannah, and is reached by a highway, and on this road is a place called Parris's, where Maile and Skinner intended to eat dinner, but they changed their minds and decided to go on to Tybee to eat a sea-food dinner and see the ocean, and on the way there, at a point some seven miles from Savannah, while traveling at a rate of speed of fifty-five miles per hour in the automobile furnished by the fertilizer company to Maile, a tire blew out, and the car, which was being operated by Maile, turned over, causing injuries to Skinner from which he died three days later; there was no business of the company which required Maile and Skinner to go to Tybee at this time; the accident happened between 4:30 and 6:30 Saturday afternoon, and they had not notified Mr. Cook of their arrival, but intended to do so after dinner so that they might have the conference with him and get back to work in their respective territory on Monday; the company made no effort to tell them where to get their meals, and had no objection to their eating at Tybee; prior to this time, on some occasions, they had eaten meals and entertained customers at Tybee.

The following opinion represents the views of the majority of the court, from which I dissent: The question presented is a most difficult one. There are no precedents from Georgia courts, and those from foreign jurisdictions are conflicting. The foreign cases contrary to what is herein held are based on the idea that a traveling salesman is not in continuous employment. Our view

is that a traveling salesman, away from home or headquarters, is in continuous employment, and that an accident to him arises in the course of his employment "if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." Christensen v. Hauff Bros., 193 Iowa, 1084 (188 N. W. 851, 853); Walker v. Speeder Machinery Cor., 213 Iowa, 1134 (240 N. W. 725), and cases cited from various jurisdictions. The case of Johnson v. Smith, 263 N. Y. 10 (188 N. E. 140), holding to the contrary, is not a unanimous decision. Three of the seven judges dissented. A traveling salesman is carried away from home by his contract of employment. When he completes his day's work he is still away for that reason. He is where he can not pursue his individual interests or pastimes. His duties draw around him a large circle, and the fact that after business hours he occupies a smaller circle, one in which he is not actually transacting business, does not automatically withdraw him from the larger circle of continuous employment. What is expected of a traveling salesman away from headquarters, before and after business hours? Is he to sit in a hotel room and read a magazine or newspaper? Is he to metamorphose himself from a natural human being into a creature apart from a world of reality and normality until work time comes again? May he walk down the street for exercise, go to church, a picture show, visit a friend, go swimming, or play golf? Whether the conduct of a salesman takes him without the larger circle depends on the circumstances of the case. In this case salesmen were permitted to entertain customers at Tybee. The evidence shows that the employer had no objection to the employees lunching there, and that his meals eaten on the occasion of this visit to Savannah were paid for by it. Even if this had not been so, without a specific contract to the contrary, we can not say that the finding was unauthorized to the effect that the desire to go to Tybee for a fish dinner was not inconsistent with or repugnant to the relationship, that it did not increase the employer's risk, and that it was an act such as an employee might reasonably do within a time when he was employed, and that Tybee was a place where the employee might reasonably be during that time. Cases involving employees, who are not traveling salesmen, injured during lunch hour or similar

periods are not applicable to this case, because they are not in continuous employment. We think that under the circumstances the Industrial Board was authorized to find that the employee suffered an injury which arose out of and in the course of his employment. There was no error in affirming the award.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur. Sutton, J., dissents.*

SUTTON, J., dissenting. Before compensation can be awarded legally to a claimant for an injury by accident, it must appear that the accident arose out of and in the course of the employment. Code, § 114-102. "An injury arises 'in the course of employment,' within the meaning of the workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. . . An accident arises 'out of' the employment when it arises because of it, as when the employment is a contributing proximate cause." *New Amsterdam Casualty Co. v. Sumrell*, 30 *Ga. App.* 682 (2, 2-a) (118 S. E. 786). These two conditions must concur before the act can apply. Injuries sustained by a traveling salesman while traveling by automobile from one town to another on business for his employer are compensable under the workmen's compensation law. *New Amsterdam Casualty Co. v. Sumrell*, supra; *Globe Indemnity Co. v. MacKendree*, 39 *Ga. App.* 58 (146 S. E. 46); *Employers Liability Assurance Corporation Limited v. Montgomery*, 45 *Ga. App.* 634 (165 S. E. 903). See also *Mitchem v. Shearman Concrete Pipe Co.*, 45 *Ga. App.* 809 (2) (165 S. E. 889).

Undoubtedly, Skinner was in the course of his employment while on the way to attend the business conference in Savannah; and, after his arrival there, if he had been transacting business for his employer or doing anything incidental thereto, or had been on his way to do so and while so engaged had been injured, the claimant would have been entitled to compensation. But the record shows that he had safely reached his destination in Savannah, had located himself as a guest in the Savannah Hotel, and he and Maile were on the way to Tybee Beach, a seaside resort, eighteen miles from Savannah, when he was injured in the automobile accident. There was no official of the company at Tybee for them to see, nor was

there any business there for them to transact. Admittedly, they were going there to eat a sea-food dinner and to see the ocean. The business conference with Cook was to be had either on Sunday or Monday morning in Savannah, and until then Maile and Skinner could spend their time as they chose and go where they pleased.

In *Ocean Accident &c. Cor.* v. *Farr,* 180 *Ga.* 266 (178 S. E. 728), Farr, a steam fitter and plumber, was engaged for his employers in renovating certain boilers in the basement of a building in Savannah, and, in order to eat his lunch during a thirty-minute lunch period, had gone to the first floor of the building to wash his hands, and, while going down the stairs on his way back to the basement to eat his lunch, fell and was injured. The Supreme Court held: "His preparation for lunch and his eating lunch was his individual affair. It was not a part of his employer's work. Seckinger [the employer] testified that he was not required to eat his lunch in the basement or in the building. The director was authorized to find that the 'noon time' was Farr's to employ as he should choose and eat his lunch where he pleased, and that the accident arose out of his individual pursuit and not out of his employment." While there seems to be no Georgia decision dealing specifically with a question like the one here involved, that is, dependent on similar facts, the weight of authority in other jurisdictions is that a traveling salesman injured while eating a meal, or on his way to obtain a meal, is not in the course of his employment, so as to authorize an award of compensation under the workmen's compensation law. The case of Johnson *v.* Smith, supra, is very similar to the present one. Johnson was employed by Smith of Watkins Glen, New York, as a traveling fertilizer salesman and in other capacities. While at Watkins Glen he was allowed an hour off for lunch for which he paid. When out of town on business for his employer, he used his discretion relating to the time and place for eating; but all his expenses on such journeys were borne by the employer. On one of these trips he went to Montour Falls to sell fertilizer, and lunched at Beardsley's restaurant. The cook was a typhoid carrier, and from the food which Johnson there consumed he contracted the disease. The State Industrial Board held that the claimant's disability arose out of and in the course of his employment. The Court of Appeals of New York reversed the judgment granting compensation, saying: "The fact that when

at Montour Falls claimant could select his time for lunch and that he would be reimbursed for his expense can not establish any substantial difference in principle from his status at Watkins Glen. On neither occasion while eating was he engaged in his employer's business. His act at one place was as exclusively personal as at the other. For the time being he was resolved into an individual exempt from duties as an employee. He was a free man, and could eat when and where he chose. During the time that he selected, his employer exerted no authority over him, and derived no benefit from his acts."

In Scott Tobacco Co. v. Cooper, 258 Ky. 795 (81 S. W. (2d) 588), where a traveling salesman on Sunday afternoon had gone to his territory away from home so as to be ready for work on Monday morning, and while that night returning to his hotel from a restaurant where he had eaten a meal, received an injury to his eye from a pebble thrown by a passing automobile, it was held that he was not entitled to compensation, because in taking his meals he was free and could eat when and where he pleased. The compensation board in that case had awarded him compensation. In Wynn v. Southern Surety Co., (Tex. Civ. App.) 26 S. W. (2d) 691, it was held: "A traveling salesman, while eating his meals or sleeping at hotels, or attending church or theaters or going on picnics or private errands for his own pleasure or profit, is not, within the contemplation of the workmen's compensation act, engaged in his employer's business, and an injury received by him while performing said acts or engaged in said recreations is not, within the purview of said law, an injury received in the course of his employment." There are other foreign cases along the same line as the ones just mentioned. And there is one, Walker v. Speeder Machinery Cor., supra, which holds to the contrary. In that case a traveling salesman was killed on a Sunday night while crossing a street from his hotel to a restaurant for the purpose of eating supper. The Supreme Court of Iowa held that since the employee had to eat to sustain himself, and as the meal which was paid for by his employer was a necessary incident of his work while away from home, the accident, therefore, arose out of and in the course of his employment. But this decision is based on the premise that the Iowa courts had prior thereto adopted the rule that a traveling salesman is in the *continuous* employment of his master while

away from home. This view has not been adopted by the Georgia courts, and I think the majority rule as expressed in the decisions just above referred to is the proper rule to apply in such cases, and especially is this true under the facts of the present case, where Maile and Skinner had been called to Savannah for a business conference, at which place they had arrived safely. They could have eaten their meals in Savannah and, so far as the record shows, could have obtained a sea-food dinner there; but instead of doing so they were, when the accident occurred, on an eighteen-mile trip to a seashore resort for the sole purpose of eating a sea-food dinner and to see the ocean. In doing this they were on their own mission, and, therefore, the accident did not arise out of and in the course of their employment. In other words, this was another trip from the one to Savannah and in no way in furtherance of the master's business. Had they been taking customers of the company to dinner there, or had they been going there to entertain customers at dinner as they had done prior to that time, then a different case to the one here involved would have been made. The cardinal rule to be applied is whether the employee was about his master's business when the accident happened which caused his injury. The accident must arise out of and in the course of the employment, and not merely during the time or period of the employment.

*U. S. Fidelity & Guaranty Co.* v. *Waymick,* 42 *Ga. App.* 177 (155 S. E. 366), is distinguishable on its facts from the present case. In that case Dr. Torrey owned Ossabaw Island, which is located near the City of Savannah. Dr. Torrey's residence was located on this island about a mile from a boat landing. Lindsay & Morgan Company were interior decorators and each year renovated Dr. Torrey's residence for his homecoming. Waymick was a painter, and with other employees was working for Lindsay & Morgan Company in renovating Dr. Torrey's residence. All of these employees were paid by the week, and were housed and fed by Dr. Torrey at the sleeping and eating place of his regular employees near the boat landing. The road leading from the landing to Dr. Torrey's residence was rough, and Waymick was killed as the result of accidentally falling from an automobile truck owned by Dr. Torrey while going from said residence to his sleeping and eating quarters after the day's work was over. Since the island was entirely under private ownership, Waymick could only eat and sleep where di-

rected by Dr. Torrey or his foreman, and it was in furtherance of his duties in getting to and from his work that he was riding in the car when accidentally killed.

It has been held in numerous cases, both by the Supreme Court and this court, that a finding upon the issues of fact by the Industrial Board is conclusive as to those issues, if there is any evidence to support it. Many cases are cited by counsel for defendant in error to this effect. But the trip to Tybee was clearly a joint personal venture on the part of Maile and Skinner, and, in my opinion, was such a departure from the master's business as to preclude a recovery of compensation in this case. I think the award of compensation was without evidence to support it, and, therefore, should be set aside.