27869. RAILWAY EXPRESS AGENCY INC. *v.*
SHUTTLEWORTH.

DECIDED FEBRUARY 7, 1940.

*Alston, Foster, Moise & Sibley, James L. Alston,* for plaintiff in error.

*Donald R. Atkinson,* contra.

GUERRY, J. This is an appeal from the judgment of the superior court of Fulton County affirming an award of the Industrial Board in favor of the widow of Shuttleworth. The facts are these: Shuttleworth was an employee of Railway Express Agency Inc., as a special agent. His duties were those generally of an investigator. His headquarters were at Nashville, Tennessee, where he had his home. His contract of employment was made and entered into in Atlanta, Georgia. As such special agent his territory embraced parts of Georgia, including Atlanta, and the State of Tennessee. His duties were to travel over this territory, and while traveling he was expected to ride in the express car and the trucks of his employer and to investigate loss and damage to shipments handled by the defendant and to confer with the attorneys of the defendant. In making his investigations and performing his duties he was allowed to use his own discretion much of the time. He had been advised to come to Atlanta from Nashville to consult with the company's attorneys, and in pursuance of that instruction from his employer he left Nashville at 10:45 a. m., May 15, 1938, and arrived in Atlanta at 5 p. m. of the same day. His engagement with the attorneys was during the business hours of May 16. He left Nashville when he did in order to get a "good night's sleep in Atlanta at some hotel in that city." There was another train which left Nashville at 10 p. m. which would have arrived in Atlanta in time for him to meet his engagement, on which the company would have been obligated to pay his Pullman fare from Nashville to Atlanta. The nature and character of his employment made it necessary that he be frequently away from home overnight and stay in hotels in various cities in his territory. There were no certain hours assigned to him within which he was to do his work, and it was often necessary for him to keep going at various and different hours. He had frequently spent the night in hotels in Atlanta and the employer paid or reimbursed him for the expenses of such accommodations; he was allowed to choose his own hotel as suited his own taste and no question was made provided the

charge did not exceed $3 per day. When he reached Atlanta on May 15 he went to the Terminal Hotel, which is both near the station and the express warehouse of his employer, where the charge is less than $3 per day. Had he not gone to confer with the attorneys of his employer at their request he would not have been an occupant of the Terminal Hotel at the time it was burned in the early morning hours of May 16, 1938. His presence there at that time was due to the fact that he intended to confer with the attorneys for his employer the next morning during business hours, and he had come to Atlanta for no other purpose. He was paid a straight salary of $220.20 per month. He lost his life in the hotel fire which occurred in the early morning hours of May 16. The Industrial Board awarded compensation and the superior court affirmed that award. To the judgment the defendant excepted.

A traveling salesman, by reason of his employment, incurs the risk necessary and incident to the requirements of such employment. This court, in *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682 (2-*b*) (118 S. E. 786), a somewhat similar case, said: "If the work of an employee or the performance of an incidental duty involves an exposure to the perils of the highway, the protection of the compensation act extends to the employee while he is passing along the highway in the performance of his duties." In *Maryland Casualty Co.* v. *Peek,* 36 *Ga. App.* 557, 559 (137 S. E. 121), it was said: "There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of some hazard connected with the employment. The danger which the employee is exposed to may originate either from the employment or outside of it, *if the exposure is peculiar to it.*" In *United States Fidelity & Guaranty Co.* v. *Waymick,* 42 *Ga. App.* 177 (155 S. E. 366), the facts showed that the claimant was employed to perform certain labor on a house, and that the employer as a part of the compensation furnished board and lodging. The claimant was injured while going from the place where he worked to the place where his meals were furnished. The court, in affirming the award, quoted therefrom as follows: "The conditions under which he was working were such that he was in effect engaged in his employment during the time that he spent on the island," the place where he worked. This ruling was affirmed by the Supreme Court on certiorari. *United States Fidelity & Guar-*

*anty Co.* v. *Waymick,* 173 *Ga.* 67 (159 S. E. 564). See also *Employers Liability Assurance Corporation* v. *Montgomery,* 45 *Ga. App.* 634 (165 S. E. 903).

If the work of a traveling salesman or representative of an employer exposes him to the hazards of the highway we can not see why he is not exposed to the same degree and in the same manner to the hazards of hotels and eating places, provided they are normal and necessary incidents to his employment. If an employee is required by the duties of his employment to be away from his home at night, and his compensation covers the expense necessary and incident to spending the night away from home, and he incurs dangers or perils arising from and incident to such staying at a hotel, "the protection of the compensation act extends" to such employee while so engaged in the service of his employer. In *Sprayberry* v. *Independence Indemnity Co.,* 41 *Ga. App.* 133 (2) (152 S. E. 125), this court held that the evidence *demanded* a finding that a housekeeper at a hotel, who was required to live in the hotel and be on duty in the nighttime, could recover, although at the time she received the injury she had been attending a drinking party (though she herself did not drink) in a room with guests of the hotel, and was returning to her room to get her hat and coat in order to go to ride with one of the guests. While so returning, she fell in the elevator and was injured. The Industrial Board held that she was not injured by reason of injuries which arose out of and in the course of her employment. The Supreme Court on certiorari reversed the Court of Appeals on the ground that the facts did not *demand* a finding in favor of the claimant, and that for that reason the award would not be disturbed. *Independence Indemnity Co.* v. *Sprayberry,* 171 *Ga.* 565 (156 S. E. 230).

In *Ocean Accident &c. Corporation* v. *Farr,* 180 *Ga.* 266 (178 S. E. 728), it appeared that Farr was employed as a steam fitter and plumber, doing certain work in renovating boilers for the employer. He was injured during the time "we all knocked off" to get lunch. It did not appear that it was the duty of the employer to furnish the lunch, but each man carried his lunch and ate when and where he pleased during the time of suspension from work. The Industrial Board found against the claim. The superior court reversed the finding and this court affirmed that judgment as one

*demanded* by the evidence, and quoted the following (*Ocean Accident &c.* v. *Farr,* 47 *Ga. App.* 110, 112, 169 S. E. 684) : "As directly applied to the noon intermission, it is a long and well-settled rule that the service tie, or contractual relations and obligations between master and servant, is not broken by such suspension of .all activities directly beneficial to the employer." This court further quoted from 1 Honnold Workmen's Comp., 381, as follows: "'Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, . . are incidents of his employment; . . . consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts . . to procure drink, food,' etc." See also 71 C. J. 670, § 411. The Supreme Court in reversing this ruling of the Court of Appeals held that the single commissioner and the full board having *found* that as a matter of fact the employee was not injured because of injury arising out of and in the course of his employment, this finding "is conclusive as to those issues in the reviewing court, if there is any evidence to sustain it" (page 270 of the opinion) ; and that they were of the opinion that the finding made was supported by the facts, which they stated were that the accident arose out of his individual pursuit and not out of his employment. This court in *Austin* v. *General Accident &c. Corporation,* 56 *Ga. App.* 481 (193 S. E. 86), held to the same effect, that the board was *authorized* to find that the employee was injured during a time which he could employ as he chose. It nowhere appears that this court or the Supreme Court held that the finding of the Industrial Board in either the *Farr* or the *Austin* case was *demandéd* in favor of the employer. It was merely held that there was evidence which supported the finding made.

Counsel for plaintiff in error insist that this case is controlled by the decision of the Supreme Court, 188 *Ga.* 823 (5 S. E. 2d, 9), reversing this court in the case of *United States Fidelity & Guaranty Co.* v. *Skinner,* 59 *Ga. App.* 82 (200 S. E. 493). In the statement of the case, page 83 of the opinion, this court said: "There was no business of the company which required Maile and Skinner to go to Tybee at this time." It is not necessary to decide that a traveling representative is in continuous employment from the time he leaves his home until the time he gets back from his employment. As was pointed out in the dissenting opinion in that

case, which was in effect adopted by the Supreme Court in reversing the case, the fact that Skinner could have obtained good food in Savannah but instead went eighteen miles away on a mission of his own which was in no way in furtherance of the business of the employer was controlling. See 71 C. J. 678, § 426.

We are unwilling to say that an employee who is required to be away from home about the business of his employer will not be allowed compensation for an injury which occurs by reason of the fact that he has to eat or sleep during that time. Proper food and proper rest are necessary and incidental to the performance of the labor required, and in the present case they were furnished and paid for by the employer. As was said in 71 C. J. 708, § 439, "Where the employment of a traveling salesman is such that he is required to take lodging at a hotel, injuries sustained on the hotel premises while he is lodging there temporarily may be compensable as injuries arising out of and in the course of his employment." In Harivel v. Hall-Thompson Co., 98 Conn. 753, 754 (120 Atl. 603), it was said: "The plaintiff was employed by the defendant as a traveling salesman under a contract providing for the payment of a weekly salary and commissions, transportation, hotel bills, etc. His employment required him to stay in hotels, . . and while doing so he suffered a personal injury in attempting to escape at night from the hotel which had caught fire. Held, that the injury arose in the course of the employment, and 'out of' it, since it resulted from a risk involved in, or incident to, the employment, or to the conditions under which the employee was required to work, between which and the injury there was an apparent and reasonably direct causal connection." See further to the same effect Stansberry v. Monitor Stove Co., 150 Minn. 1 (183 N. W. 977, 20 A. L. R. 316), in which some seemingly conflicting decisions from other States are discussed and distinguished.

This is not a case where the employee departed on an independent venture of his own, as in the Skinner case, supra, and thus disassociated himself from the business of the master. It has been repeatedly held by the courts of this State that the master is not liable for the tort of the servant who steps aside from his employment, engages in an independent venture of his own, and in such venture injures a third person. A traveling salesman, as in the Skinner case, who goes to a resort, not about the business of

his employer, but solely for his own pleasure and amusement, is not engaged in the business of his employment. It does not follow that when he is eating or sleeping in the usual, regular, and accepted manner incident to the performance of his duties as a traveling representative of his employer, he thereby disassociates himself from his employment. Counsel for plaintiff in error insists that Shuttleworth might have come from Nashville on a later train and thus escaped the burning of the hotel. There can be no question that had he been injured in his trip on the train by the ordinary hazards of the transportation he would have been entitled to compensation. There was nothing about his contract of employment that required him to wait and take a night trip and spend the night on the train, rather than at a hotel. Such being the case, his spending the night at the hotel was a necessary and normal incident of his employment. Such a risk is peculiar to the employment, and the finding of the Industrial Board was at least authorized, and, we think, even demanded by the evidence in this case. See 1 Honnold, 417, § 116. Whatever may be the ruling in other jurisdictions, and that they are not in entire accord although there is plenty of outside authority for our position, we think the rule here laid down is in consonance with the provisions and purposes of the act. There was no error in affirming the award.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*