30575. HARTFORD ACCIDENT AND INDEMNITY COMPANY *et al.* v. THORNTON.

DECIDED JULY 15, 1944.   REHEARING DENIED JULY 25, 1944.

*Neely, Marshall & Greene, T. Elton Drake,* for plaintiffs in error.
*James C. Howard Jr.,* contra.

PARKER, J.   This is a workmen's compensation case. There was no issue on the facts. It was agreed that James R. Thornton, the deceased, was a traveling salesman for S. P. Richards Paper Company of Atlanta, Georgia, and that the State of Georgia was his territory. He made up his own route, and went into the territory more or less as he pleased. His salary was $150 a month, and his expenses were paid by his employer. His death occurred on June 11, 1943. The claimant was his legal wife, and is his dependent widow. Presumably he resided in Atlanta, although this does not seem to appear in the record. The time, place, and circumstances surrounding the injury from which he died were covered by a stipulation entered into by the parties as follows: "It is stipulated that the deceased checked in the Georgian Hotel between 3 and 5 p. m. the evening of June 7, 1943, the Georgian Hotel being located in Athens, Georgia, which is in Clarke County, Georgia. Mr. Thornton was a traveling salesman for the company, and Athens, Georgia, was a part of his territory that he serviced in connection with his employment by the company. That he was seen in the lobby of the hotel a few minutes after checking in, and then he, crossed the street to the other side and walked about two doors west to the D. Jones Café, where he had dinner, staying in the café something like an hour, having his meal, and reading the newspaper during the course of the meal. It was raining at the

time. As he was leaving the café he passed by the cashier's counter and spoke to her, the deceased and the cashier being acquainted, as it was the custom of the deceased to eat his meals at the D. Jones Café during the course of his stay in Athens, Georgia. On leaving the café he walked about two doors east to the point where he had previously crossed the street, which was in front of the Georgian Hotel where he was staying, and as he started back across the street to the hotel he slipped and fell, and suffered a fractured skull from which he died on June 11, 1943. He called on the Stone Printing Company and the Burman Printing Company after he had checked in the hotel and it is agreed and understood he did not secure orders from either of the firms called upon, and he had returned to the hotel where he was seen about 6 o'clock preparatory to going across and eating his meal. He was received in the hospital about 7:45 p. m. after his accident, and remained in the hospital until the day of his death, June 11, 1943, where he died as a result of his injury on June 7, 1943."

The director hearing the case made findings of fact and law in part as follows: "It seems to me the facts in this case show conclusively this employee was on the business of his employer, that he was in a city or town which was a regular part of his territory, that he was stopping at a hotel where he normally stopped, and it is undisputed that he was taking a meal at a place where he had been accustomed to eating over a period of time. There was nothing irregular about any of the transactions leading up to the accident and injury which resulted in his death. As stated in one of the cases cited, this employee being a traveling salesman occupied a different status to the ordinary workman. From the decisions rendered by the appellate courts of our State, I am of the opinion that the evidence in the case demands a finding that the accident and injury of James R. Thornton on June 7, 1943, which resulted in his death on June 11, 1943, arose out of and in the course of his employment." He made an award accordingly, which was approved and affirmed by a full board on review, and sustained by the superior court on appeal; and the exception is to the judgment overruling the appeal and affirming the award in favor of the claimant.

The sole question for our determination is whether the injury to the claimant's husband causing his death arose out of and in the

course of his employment within the purpose and meaning of the compensation act. "An injury arises 'in the course of employment,' within the meaning of the workmen's compensation act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. . . . An accident arises 'out of' the employment when it arises because of it, and when the employment is a contributing proximate cause. . . If the work of any employee or the performance of an incidental duty involves an exposure to the perils of the highway, the protection of the compensation act extends to the employee while he is passing along the highway in the performance of his duties." *New Amsterdam Casualty Co.* v. *Sumrell*, 30 *Ga. App.* 682 (118 S. E. 786); *Sprayberry* v. *Independent Indemnity Co.*, 41 *Ga. App.* 133, 145 (152 S. E. 125); *U. S. Fidelity & Guaranty Co.* v. *Waymick*, 42 *Ga. App.* 177, 180 (155 S. E. 366). "The terms 'in the course of' and 'out of' are not synonymous. Both must occur to render the case a compensable one." *New Amsterdam Casualty Co.* v. *Sumrell*, supra; *Maryland Casualty Co.* v. *Peek*, 36 *Ga. App.* 557, 559 (137 S. E. 121).

Counsel for Mrs. Thornton, the defendant in error, cite *Railway Express Agency* v. *Shuttleworth*, 61 *Ga. App.* 644 (7 S. E. 2d, 195), in which this court held that an employee whose work requires that he travel and spend nights away from home, at hotels or lodging places, is protected by the workmen's compensation law from exposure to the perils of the highway and the hazards of hotels which occur in the normal, usual, and accustomed manner, and which are incident to such exposure. In that case an award in favor of the widow of an employee of the express company who lost his life when the Terminal Hotel in Atlanta burned was upheld. The award of the board in the instant case is apparently predicated on the *Shuttleworth* case, as the hearing director quotes from it in his findings. We think the *Shuttleworth* case went quite far enough in extending the protection of the act to traveling employees, and we can not extend the scope of coverage under the act to a traveling employee for the entire time he may be away from his home, and without regard to what he may be doing when injured. Because a traveling employee must

eat and sleep while away from home, things common to all human life, eating and sleeping are not necessarily normal incidents to his employment. If the deceased had been burned to death in a hotel in which he was stopping overnight, while in Athens on business connected with his employment, the *Shuttleworth* case would have been applicable and probably controling, but the deceased was injured crossing a street in returning to the hotel from a mission which had no causal connection between the employment and the injury. In *Maryland Casualty Co.* v. *Peek,* supra, this principle was stated as follows: "There must be a causal connection between the employment and the injury, and the injury must be the rational consequence of some hazard connected with the employment." So far as the record shows, the deceased could have eaten in the hotel, or on the same side of the street on which it was situated, or at some other place, and without exposing himself to the perils of crossing a wet and slippery street. To hold that there was a causal connection between the employment and the injury in this case, which is necessary to sustain the award, would be the equivalent of holding that a traveling salesman while away from home or headquarters, is in continuous employment, and that any accident he may suffer arises out of and in the course of his employment. We do not understand that to be the rule in Georgia. See *U. S. Fidelity & Guaranty Co.* v. *Skinner,* 188 *Ga.* 823 (5 S. E. 2d, 9), reversing the decision of this court in 59 *Ga. App.* 82 (200 S. E. 493). While "the scope of employment of a traveling man is wider than that of an ordinary employee," as was said by this court in *Employers Liability Assurance Corp.* v. *Pruitt,* 63 *Ga. App.* 149, 151 (10 S. E. 2d, 275), this does not mean that traveling salesmen or other traveling employees are more favored or protected than other employees under the compensation act. The scope and range of a traveling man's territorial activity necessarily broadens the field of his employment, but in no other way is a traveling employee distinguished under the act from ordinary employees who do not have to travel in the performance of their work.

The defendant in error also relies on the *Pruitt* case cited in the preceding paragraph. In that case the deceased was employed as a traveling salesman to sell correspondence courses. He stopped in Lawrenceville, Georgia, while returning to his home in Decatur

from a business trip for his employer, and went into a café about noontime. Upon entering the café he made inquiry as to the whereabouts of a person who was a prospective customer. He then sat down on a stool and ate lunch. After eating he turned slowly on the stool, lost his balance, fell from the stool, and received the injury causing his death. This court held that the Industrial Board was authorized to find that the injury to the deceased arose out of and in the course of his employment; that the case was controlled by the *Shuttleworth* case, but was even stronger on its facts in favor of the claimant because the board was authorized to say the deceased had gone into the café "for the purpose of conducting his business and actually conducted it while in the café." It is apparent that the facts of the *Pruitt* case differ materially from the facts in the instant case, and the controling facts on which the *Pruitt* case seems to have been decided, included in the quotation above, are wholly lacking in this case. The defendant in error also cites *U. S. Fidelity & Guaranty Co.* v. *Waymick,* supra, holding that "The conditions under which he (the deceased) was working were such that he was in effect engaged in his employment during the time that he spent on the island." As stated in that case, its facts differentiate it from any case to which the court's attention had been called. The deceased in that case was not a traveling salesman, and under its unusual facts it is clearly not controling in the case at bar. While the defendant in error contends that the issue in this case has been determined in her favor by the rulings in the cases we have already discussed, her counsel cites other decisions relating to the slight deviation rule in master and servant cases. We have examined these authorities and have concluded that they are not applicable to the case at bar. The deceased had finished his day's work at the time of the accident, and was returning from a mission of his own, and was not engaged in fulfilling any of the duties of his employment or doing anything incidental thereto, and the slight-deviation rule does not apply.

Without citing or referring in this opinion to many cases decided by this and other courts construing the meaning of the words "arising out of and in the course of the employment," as used in defining an "injury" and a "personal injury" in the Code, § 114-102, we have, after careful consideration, concluded that this

case is controlled by the decision of the Supreme Court in *U. S. Fidelity & Guaranty Co.* v. *Skinner,* supra. In that case a traveling salesman residing in Macon, Georgia, was called by his employer to Savannah for a conference relating to the business of the employer. After reaching Savannah during the afternoon, and after having registered at a hotel, the deceased decided to go to Tybee Beach, eighteen miles from Savannah, with another employee of the company who had accompanied him from Macon to Savannah, "to get a sea-food dinner and to see the ocean." They had no business to transact for their employer at the beach, but the company recognized that the beach was a reasonable and proper place for them to go and take dinner at the company's expense, they having previously made such trips with the company's approval. They were driving a car furnished by their employer. A tire blew out, the car turned over, and the deceased received injuries from which he died. His widow was awarded compensation by the Board of Industrial Relations. That award was sustained on appeal to the superior court, and on writ of error this court affirmed that judgment. On certiorari the Supreme Court reversed the judgment of this court. As we see the two cases, the *Skinner* case and the case at bar, the difference in the facts is merely a matter of degree, and the principle applied in the one is clearly applicable to the other. The Supreme Court having held in the *Skinner* case that the evidence demanded a finding that the injury did not arise out of and in the course of the employment, within the meaning of the Georgia workmen's compensation law, we are compelled to reach a similar conclusion and announce a like holding in this case. If contrary rulings have heretofore been made by this court, they necessarily yield to the ruling of the Supreme Court.

Under the agreed statement of facts a finding that the injury to the deceased did not arise out of and in the course of his employment was demanded as a matter of law, and the court erred in affirming the award of compensation.

*Judgment reversed. Sutton, P. J., concurs. Felton, J., dissents.*