## 48691. CITY OF ATLANTA v. MADARIS.

CLARK, Judge. In this appeal by the City of Atlanta from an award to a widow and minor children for workmen's compensation benefits a mystery exists as to the manner in which its employee met his death as a result of a gunshot wound. The death certificate recites the cause to be an "accidental discharge of firearm." The police report described it as "apparently accidental." There was nothing in the evidence to warrant either suicide or an attack by an aggressor. A conclusion is stated in the police report that the employee had been working on his automobile and "tapped something under the hood with the revolver causing it to discharge and inflicting the fatal wound." As the employee had on the previous day noted to his supervisor the fact of his having engine trouble and had at that time worked on his car during working hours the likelihood is that the death resulted from the unwise use of the butt of the pistol for the purpose of hammering a motor part.

Madaris was employed as a night watchman for the Oakland Cemetery with his working hours being from 4 p.m. until 12 midnight. Although he was not issued a pistol nor required to possess a firearm he had in fact in the performance of his duties regularly carried the pistol which caused his death. By personal observation his supervisor knew of the decedent's custom in this respect and made no objection. Similarly the supervisor knew that the employee brought his personal automobile into the

cemetery to use in patrolling the 88 acres comprising the Oakland Cemetery and that the employee did engine work of a minor nature during working hours. In fact, at 4:30 p.m. on the day of the unfortunate event, the supervisor had observed through his office window the employee's car with the hood up and the employee standing in front of it. Shortly thereafter the employee was discovered dead on the ground in front of his automobile with the hood still up. The car keys were on the fender.

The city introduced its ordinances showing employees were prohibited from carrying weapons on municipal property. The city's principal defense of "wilful misconduct" under Code § 114-105 was based on these laws. Additionally, the city denied that the death arose out of and in the course of employment. The deputy director awarded compensation which was confirmed by the full board and sustained on appeal to the superior court.

1. "It is well settled that the findings of fact in an award, supported by any evidence, are, in the absence of fraud, conclusive on the reviewing court. Code Ann. § 114-710, and cases annotated under catchwords, 'Conclusivenesses of findings.'" *Pan American Fire &c. Co. v. Cothran,* 109 Ga. App. 332, 333 (136 SE2d 163) cited and applied in *Travelers Ins. Co. v. Hall,* 128 Ga. App. 71, 74 (195 SE2d 679). In the instant case the "any evidence rule" is met in testimony from the superintendent of the Oakland Cemetery which established that the incident occurred around 4:30 p.m., that the automobile was parked where it was always placed by the employee, and that use of the private automobile by the sole watchman patrolling an area of 88 acres comprising the Oakland Cemetery had been customary.

As to the "wilful misconduct" based on the city ordinance we must note the absence of any voluntary violation on the part of the decedent who undoubtedly assumed that his title of "security officer" and possession of police authority conveyed the privilege of carrying a weapon in performance of his duties. This would be true even though the city had not issued him a pistol. Contradiction of any intentional voluntary violation is also shown in the knowledge from personal observation on several occasions by the immediate supervisor that the employee carried his personal pistol while performing his duties. Significant also is the fact that this immediate supervisor who had worked for 27 years with the City of Atlanta did not know of any rule or ordinance which would forbid a security officer from carrying a

pistol, that he knew decedent did so, and that he had not expressed disapproval. Additionally, the general manager of parks and cemeteries testified that even though security guards were not furnished weapons by the city that possession of pistols was not prohibited.

Our Workmen's Compensation Act denies recovery for an injury or death when due to the "wilful misconduct" of the employee. Code § 114-105. Construction of the meaning of wilful misconduct has in most states required that the employee knew and understood the statute, that its violation was intentional, and that the injury was of the kind which the statute aimed to prevent. 1A Larson's Workmen's Compensation § 35.00 (1973 Ed.).

From the citations contained in capable city counsel's brief it appears that Georgia does not follow the general rule of inadvertent or unconscious or unintentional violation of the law as not being within the ambit of "wilful misconduct." Thus, in *Aetna Life Ins. Co. v. Carroll*, 169 Ga. 333 (150 SE 208) the Supreme Court ruled that the wilful and conscious doing of an act which is in violation of a penal statute constitutes wilful misconduct and denied recovery for an employee who had approached a railroad crossing at an excessive rate of speed in violation of a statute which made such act a misdemeanor. Complying with this ruling our court held in *Pacific Indemnity Ins. Co. v. Eberhardt*, 107 Ga. App. 391, 393 (130 SE2d 136) that jaywalking constituted wilful misconduct within the meaning of our compensation act. In neither of those cases was there an awareness of the act by the employer prior to the act constituting the crime being committed. We hold that the knowledge here by the employer through the immediate supervisor of the regular and continued possession of a pistol in the performance of the employee's duties as a night watchman and the supervisor's condonation of such daily possession by employee of the pistol on city property removes the instant case from the bar of wilful misconduct.

2. "When the activity in which an employee was engaged when he died was in the interest of his employer and reasonably incident to his regular work, the employment was a contributing cause of death. . . " *Cabin Crafts v. Pelfrey*, 119 Ga. App. 809 (168 SE2d 660). Decedent's private automobile was used in his duties in patrolling the cemetery and there could not be any "wilful misconduct" attributed to the unwise use of a loaded pistol to

hammer an engine part in the effort to make it run to enable him to use it in covering the extensive area of the city's cemetery.

3. The facts here bring this case within the holding of *Railway Express Agency v. Shuttleworth,* 61 Ga. App. 644 (1) (7 SE2d 195) that "An injury arises out of the employment when there is apparent to the rational mind, upon a consideration of all the circumstances, a casual connection between the conditions under which the work is required to be performed and the resulting injury." "An accident arises out of the employment. . . when the same arises because of it," and from "a risk incidental to the nature of the employment or such as could be seen to have had its origin in a risk connected with the business of the employer, and to have arisen out of and flowed from that source as a natural consequence." *Williams v. Maryland Casualty Co.,* 99 Ga. App. 489, 492 (109 SE2d 325).

4. City counsel also argues there was no testimony to show that on the subject date the employee had performed any duties of his employment and that the work on his automobile was personal even though this car was used without objection by decedent in the performance of his duties. Since the incident occurred during his working hours and at his place of employment the applicable principle is "When an employee is found dead in a place where he might reasonably be expected to be in the performance of his duties, the natural presumption arises that his death arose out of and in the course of his employment." *Hartford Accident &c. Co. v. Cox,* 101 Ga. App. 789 (115 SE2d 452).

*Judgment affirmed. Hall, P. J., and Evans, J., concur.*

SUBMITTED OCTOBER 4, 1973 — DECIDED JANUARY 7, 1974 — REHEARING DENIED FEBRUARY 6, 1974.

*Henry L. Bowden, Henry M. Murff,* for appellant.
*Herbert T. Jenkins, Jr.,* for appellees.